**UNITED STATES of America, Appellee,**

v.

**Adeyemi ADENIJI, Defendant–Appellant.**

**No. 1158, Docket 93–1461.**

United States Court of Appeals, Second Circuit.

Argued March 9, 1994.

Decided July 28, 1994.

As Amended Aug. 17, 1994.

Daniel H. Murphy, II, New York City, for defendant-appellant.

Joseph Nocella, Asst. U.S. Atty., (Zachary W. Carter, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., Brooklyn, NY, of counsel), for appellee.

Before: FEINBERG, MINER, Circuit Judges and KNAPP, District Judge.*

MINER, Circuit Judge:

Defendant-appellant Adeyemi Adeniji appeals from a judgment of conviction and sentence entered on August 3, 1993 in the United States District Court for the Eastern District of New York (Merhige, *J.*, sitting by designation), after a jury trial, convicting him of importing heroin, in violation of 21 U.S.C. § 952(a), and possessing heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Adeniji to concurrent sixty-three month terms of imprisonment, to be followed by a four-year term of supervised release, and imposed a $100 special assessment. On appeal, Adeniji contends that the district court committed reversible error during the trial by: (1) failing to strike the testimony of a government agent regarding an oral statement made by Adeniji that was not disclosed prior to trial; (2) allowing a juror to make oral inquiries; (3) failing to give a missing witness charge; and (4) giving an improper conscious avoidance charge after having assured the parties that such an instruction would not be given. In a separate pro se

* Honorable Whitman Knapp of the United States District Court for the Southern District of New York, sitting by designation.

submission, Adeniji also contends that he was convicted in contravention of his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. While we conclude that none of the trial error claims warrants reversal of Adeniji's conviction, we remand the case to the district court to consider the Speedy Trial issue.

## BACKGROUND

Adeniji was arrested at John F. Kennedy International Airport in Queens, New York on September 11, 1991, after he arrived on a plane from Lagos, Nigeria. During a routine customs search, approximately 950g of heroin was discovered in the linings of three suit jackets packed in Adeniji's garment bag. On October 1, 1991, a two-count indictment was filed charging Adeniji with importing heroin, in violation of 21 U.S.C. § 952(a), and possessing heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1).

Adeniji moved to dismiss the indictment on the ground that the Government had failed to bring him to trial within the seventy-day period specified by the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1). In an August 10, 1992 memorandum and order, the district court denied the motion. In concluding that the Speedy Trial Act had not been violated, the court found that only fifty-one includable days had elapsed. The fifty-one days represented the length of time between Adeniji's October 15, 1991 arraignment and a December 5, 1991 pre-trial conference. The time subsequent to December 5 was deemed excludable pursuant to an order of excludable delay or a speedy trial waiver executed by Adeniji.

The trial commenced on August 19, 1992. United States Customs Inspector Isabel Galantino testified that she stopped Adeniji to conduct the search, escorted him to a customs counter and began searching his garment bag. She noticed three suit jackets at the bottom of the bag and observed that they were thick, bulky and heavy. She probed the lining of one of the jackets with a small instrument and, upon withdrawing the instrument, noticed powder on it. Inspector Galantino alerted her supervisor, who instructed two male inspectors to take Adeniji to a private search room. Inspector Galantino placed Adeniji's belongings back in the garment bag and brought the bag to the search room.

Inspector Galantino sliced open the linings of the jackets and discovered packages containing the heroin. She placed Adeniji under arrest and advised him of his *Miranda* rights. The Joint Narcotics Smuggling Unit ("JNSU") office was notified and Special Agent Richard Bell of the Drug Enforcement Administration came to the search room. Agent Bell testified that, while processing Adeniji at the JNSU office, Adeniji directed him to send his belongings to his ex-wife. According to Agent Bell, Adeniji at that time admitted that the jackets belonged to him.

Adeniji testified on his own behalf. He stated that he was escorted to the private search room by an unidentified Customs agent after Inspector Galantino began searching his garment bag. Fifteen to twenty minutes later, the agent purportedly showed Adeniji the jackets and told him that narcotics had been found in them. Adeniji testified that he never had seen the jackets before and that they did not belong to him. He also testified that other items of clothing that later were sent to his ex-wife by Agent Bell did not belong to him either. When called to testify, Adeniji's ex-wife corroborated this statement and also testified that she did not recognize the three jackets.

After the direct examination of Adeniji, a juror was permitted to ask questions. The juror first asked whether portions of the transcript could be read back. The court responded: "We will look at it." The juror also asked whether Adeniji could try on the jackets and inquired as to the sizes of the jackets and matching pants. The prosecutor indicated that he would ask these questions on cross-examination. After cross-examination was completed, the same juror identified the portions of the transcript that he wanted read back and also inquired why the unnamed agent to whom Adeniji referred had not testified. The court at that time informed the juror that the transcript could be read back and, referring to the unnamed agent, stated that the trial was not yet over.

At the charging conference held after the presentation of evidence and prior to summation, the court informed counsel that the conscious avoidance charge requested by the Government would not be given to the jury. In reliance on this advice, counsel for both sides confined the scope of their summation to Adeniji's actual knowledge of the presence of heroin and the related issue of whether Adeniji knew that the jackets were in his garment bag. After summations, the court gave the jury its instructions and, reversing its prior ruling without notice, included a conscious avoidance charge.[1]

## DISCUSSION

### 1. Conscious Avoidance Charge

Adeniji first argues that the district court committed reversible error by charging the jury on conscious avoidance without giving the parties notice. While we agree that the charge was both improper and given in violation of the provisions of Rule 30 of the Federal Rules of Criminal Procedure, we conclude that it was harmless error under the circumstances.

■ A conscious avoidance charge, such as the one employed by the district court, instructs the jury that it can infer knowledge by the defendant of a particular fact if the defendant intentionally decides to avoid knowledge of that fact. See United States v. Rodriguez, 983 F.2d 455, 457–58 (2d Cir. 1993). The rationale for the conscious avoidance doctrine is that "a defendant's affirmative efforts to 'see no evil' and 'hear no evil' do not somehow magically invest him with the ability to 'do no evil.'" United States v. DiTommaso, 817 F.2d 201, 218 n. 26 (2d Cir.1987). Accordingly, the giving of this

charge is proper "'where a defendant has claimed lack of some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance.'" United States v. Boothe, 994 F.2d 63, 69 (2d Cir.1993) (quoting United States v. Lanza, 790 F.2d 1015, 1022 (2d Cir.), cert. denied, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986)). Moreover, the evidence must allow a rational juror to conclude "beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." Rodriguez, 983 F.2d at 458.

We often have upheld the use of conscious avoidance charges where a defendant concededly possessed an item, but denied knowledge of the illegal content or use of the item, see, e.g., Boothe, 994 F.2d at 69–70 (charge appropriate where defendant who picked up cartons of paper for use in counterfeit operation denied knowledge of operation); Rodriguez, 983 F.2d at 458 (charge appropriate where defendant denied knowledge of four pounds of cocaine concealed in lining of suitcase that she allegedly purchased at flea market), or was present at an illegal transaction, but denied knowledge of the illegal nature of the meeting, see, e.g., United States v. Mang Sun Wong, 884 F.2d 1537, 1541–42 (2d Cir.1989) (evidence that defendant "remain[ed] at the periphery of the transaction" and received large sum of cash from co-defendant without instructions for disposal, coupled with defense that he lacked knowledge that a crime was being committed and had no part in it, justified charge), cert. denied, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

---

1. The charge was given as follows:

[T]he element of knowledge may also be satisfied by inferences drawn from proof that a defendant deliberately closed his or her eyes to what would otherwise have been obvious. A finding beyond a reasonable doubt of a conscious purpose to avoid knowledge would permit an inference of knowledge unless the facts show that the defendant actually believed that the materials were not narcotics, or actually had no reason to believe that there were any narcotics in the, in this case in that bag.

Stated another way, if you find beyond a reasonable doubt that the defendant was aware of a high probability that narcotics were in the suit jackets that the government claims they were in, but deliberately closed his eyes to that possibility, then the court charges you that you may treat such deliberate avoidance, if you find that, of positive knowledge as the equivalent of knowledge. It is entirely up to you as to whether you find any deliberate closing of the eyes, so to speak, as are the inferences to be drawn from any such evidence entirely up to you. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

■ In the circumstances of this case, however, we cannot agree with the Government that the charge was warranted. Adeniji never claimed either that he carried the jackets but did not know that heroin was inside the linings or that someone put the jackets in his bag prior to the customs inspection without his knowledge. The district judge himself questioned Adeniji on this point: "I am not asking [whether they were your suits]. Asking [sic] whether you are saying these suits definitely were not in your luggage when you arrived in New York? . . . There is a difference. You didn't see them, or you are you [sic] telling us they weren't there?" Adeniji responded that the suits definitely were not in the garment bag. Indeed, Adeniji's defense theory was that the jackets did not belong to him, that he never saw the jackets before the customs inspection and that they were placed in the garment bag after a mix-up on the customs counter with another garment bag. Thus, the evidence does not support any inference that Adeniji was consciously avoiding knowledge that the jackets and heroin were in his garment bag. *See Mang Sun Wong,* 884 F.2d at 1542 n. 5 (in order for conscious avoidance charge "properly to be given, the defendant must claim a lack of culpable knowledge and the proof at trial must support an inference of deliberate ignorance").

■ Although the district court erred in giving the conscious avoidance instruction, we conclude that the error did not affect any substantial rights in this case. Fed. R.Crim.P. 52(a). We disagree with Adeniji's contention that the charge "eviscerate[d] the defense argument that the suit jackets were never in Adeniji's luggage when he entered the United States" and caused the jury necessarily to infer that he possessed the jackets. We conclude that the lack of evidence of conscious avoidance, coupled with the evidence of actual knowledge, compels a finding of harmless error. *See United States v. Stone,* 9 F.3d 934 (11th Cir.1993), *cert. denied,* — U.S. —, 115 S.Ct. 111, — L.Ed.2d — (1994).

In *Stone,* the jury was instructed on both actual knowledge and conscious avoidance in a case involving the filing of a false claim for an income tax refund. The court affirmed the conviction without deciding whether it was error to give the conscious avoidance charge, concluding that any error was harmless. *Id.* at 937. In so doing, the court observed that "[f]ew tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instruction" and noted that the jury clearly was instructed that to apply the conscious avoidance doctrine it must find proof beyond a reasonable doubt that the defendant deliberately kept himself ignorant of the relevant facts. *Id.* at 938. It then characterized the issue as closely analogous to *Griffin v. United States,* 502 U.S. 46, — – —, 112 S.Ct. 466, 472–74, 116 L.Ed.2d 371 (1991) and *Sochor v. Florida,* — U.S. —, —, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992), cases in which the Supreme Court emphasized that juries are well equipped to disregard factually inadequate theories of guilt. 9 F.3d at 938–39. Accordingly, the court held that "[b]ecause we presume that the jury followed its instructions, it follows that the jury disregarded the deliberate ignorance instruction and that the guilty verdict was based on the only remaining theory: [Defendant's] actual knowledge." *Id.* at 940.

Here, Adeniji does not complain that the conscious avoidance instruction used by the district court was an incorrect recitation of the applicable legal standard, and a review of the charge demonstrates that the jury was instructed not to apply the doctrine unless there was sufficient evidence to prove conscious avoidance beyond a reasonable doubt. Given the fact that there was insufficient evidence to support a finding of conscious avoidance, it is apparent to us that the jury did not convict Adeniji on that theory. *See United States v. Cartwright,* 6 F.3d 294, 301 (5th Cir.1993) ("Where there is no evidence of conscious ignorance . . . [t]he instruction is surplusage and thus does not create the risk of prejudice.") (internal quotations omitted). Instead, we presume that the jury convicted Adeniji on the basis of actual knowledge, an alternative theory that was supported by the evidence. *See Stone,* 9 F.3d at 941 ("there is no requirement that the evidence in support of the alternative legal theory be so strong as to compel conviction").

Moreover, we are satisfied that the jury convicted Adeniji on the basis of actual knowledge because there was overwhelming evidence to support that finding. *See Cartwright,* 6 F.3d at 301 ("Error in giving [conscious avoidance] instruction is ... harmless where there is substantial evidence of actual knowledge."); *United States v. Barbee,* 968 F.2d 1026, 1033–35 (10th Cir.1992) (harmless error where instruction correctly stated legal standard, overall charge required jury to find guilt beyond a reasonable doubt as to every element and evidence overwhelmingly proved actual knowledge); *United States v. Rivera,* 944 F.2d 1563, 1572 (11th Cir.1991) (error was harmless where jury was instructed on theory of actual knowledge and the evidence supported the conviction under that theory); *United States v. Alvarado,* 838 F.2d 311, 312 (9th Cir.1988) (harmless error where overwhelming evidence compelled guilty verdict on all counts).

As the Government argued in summation, Adeniji was caught "red-handed" and the case was "simple and straight-forward." In his defense, Adeniji only argued that the jackets had not been seized from his garment bag. Clearly, the jury discredited Adeniji's testimony and was not persuaded by the defense theory. There was substantial evidence indicating that the jackets belonged to Adeniji and were in the garment bag prior to the search. As Adeniji acknowledges, the only natural inference to be drawn from the conclusion that the jackets were in his garment bag is that he actually knew that the jackets contained the heroin. Accordingly, the evidence of actual knowledge is manifest and, therefore, any error caused by the inclusion of the conscious avoidance instruction was harmless.

■ Aside from the error in giving a conscious avoidance instruction in the first instance, we also note that the instruction clearly was given in violation of Rule 30, which requires the district court to rule on proposed instructions prior to summation. Fed.R.Crim.P. 30. A violation of Rule 30 warrants reversal, however, only "where the defendant can show that he was 'substantially misled in formulating his arguments' or otherwise prejudiced." *United States v. Ei-sen,* 974 F.2d 246, 256 (2d Cir.1992) (quoting *United States v. Smith,* 629 F.2d 650, 653 (10th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980)), *cert. denied,* —— U.S. ——, ——, ——, 113 S.Ct. 1619, 1840, 1841, 123 L.Ed.2d 178, 467, 467 (1993). Here, Adeniji cannot show the requisite prejudice. Adeniji was not substantially misled or compromised in formulating his arguments because his theory of defense was lack of possession, not lack of knowledge. Adeniji claims that, had proper notice of the charge been given, he would have argued on summation that conscious avoidance was irrelevant, because the jury was entitled to find him guilty if it were shown that he knew the suit jackets were in his garment bag. This argument would not have improved Adeniji's chances of acquittal.

### 2. Other Alleged Trial Errors

■ Adeniji also argues that the district court made three other errors during the course of trial that require reversal of his conviction. We conclude that all of these arguments lack merit.

Adeniji first contends that the district court erred in failing to strike Agent Bell's testimony regarding Adeniji's acknowledgment that he owned the jackets. Adeniji argues that this testimony should have been stricken because it was not disclosed to him before trial, in violation of the provisions of Fed.R.Crim.P. 16(a)(1)(A), which requires the Government to disclose relevant oral statements made to Government agents. Assuming a violation of Rule 16, "reversal will only be warranted if the nondisclosure results in substantial prejudice to the defendant." *United States v. Sanchez,* 912 F.2d 18, 21 (2d Cir.1990); *accord United States v. McElroy,* 697 F.2d 459, 465 (2d Cir.1982). By substantial prejudice, we mean more than that the statement was damaging to the defendant: the defendant must demonstrate that the untimely disclosure of the statement adversely affected some aspect of his trial strategy. *See Sanchez,* 912 F.2d at 22–23. Since Adeniji fails to identify any prejudice resulting from the disclosure of the statement at trial, his claim must fail. Moreover, Adeniji's contention that Agent Bell commit-

ted perjury is of no moment because he has offered no evidence to support that allegation. Even if perjury had been clearly established, a new trial is not warranted where the prosecution unknowingly uses perjured testimony "unless we can say that the jury probably would have acquitted in the absence of the false testimony." *United States v. Sanchez*, 969 F.2d 1409, 1413–14 (2d Cir.1992). Adeniji does not attempt to make this showing and, given the substantial evidence in the case linking him to the jackets, he would not be able to do so.

▮▮▮▮ Adeniji also argues that the district court erred by allowing a juror to make oral inquiries. In *United States v. Ronder*, 639 F.2d 931, 934 (2d Cir.1981), we outlined a four-step approach for courts to follow in responding to questions posed by jurors. This procedure includes a requirement that the inquiries be submitted in writing and that counsel have an opportunity to suggest appropriate responses. *Id.* However, noncompliance with this procedure does not mandate reversal unless prejudice is shown. *See United States v. Tillem*, 906 F.2d 814, 827 (2d Cir.1990); *United States v. Ulloa*, 882 F.2d 41, 45 (2d Cir.1989). In this case, Adeniji complains that the questions were an "aid to the prosecution." The court's responses to the juror's questions here did not prejudice Adeniji. *See Tillem*, 906 F.2d at 827 (trial judge's extemporaneous response to juror's oral inquiry appropriate where juror merely sought slight clarification of instruction). Although the court agreed to readbacks of testimony, no testimony was read back until after deliberations had begun and the jury had made written requests. While the court responded to one question by stating that Adeniji would be required to try on the jackets, this line of inquiry actually was pursued by the Government on cross-examination. The district court never answered the juror's other questions regarding the sizes of the jackets and pants and why the "other agent" about whom Adeniji testified was not called as a witness.

▮▮▮▮ Finally, Adeniji contends that the district court committed plain error in failing to give a missing witness charge regarding the unnamed agent who purportedly ques-

tioned him about the jackets. "It is well settled that when a party has it peculiarly within its power to produce witnesses and fails to do so, the jury may infer that the testimony, if produced, would be unfavorable to that party." *United States v. Myerson*, 18 F.3d 153, 158 (2d Cir.1994) (internal quotations omitted). Where the witness is equally available to both parties, an instruction on this inference is inappropriate. *See United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir.1988) (observing that availability of witnesses depends on the facts and circumstances of the witnesses' relationship to the parties, not merely physical presence or accessibility). The decision whether to give a missing witness instruction is within the discretion of the trial court, and its failure to give the instruction rarely warrants reversal. *Id.* at 1171. In this case, the only evidence that there was another Customs agent came from Adeniji himself. Thus, the district court could have refused to give the instruction simply because there was insufficient evidence that there even was a missing witness. Moreover, Adeniji has not shown that the missing agent was unavailable to him; indeed, he did not even inquire about the agent prior to trial. *See United States v. Nichols*, 912 F.2d 598, 601–02 (2d Cir.1990) (failure to call law enforcement agents as witnesses did not require missing witness charge since agents were equally available to defendant). Accordingly, Adeniji cannot show that the district court committed any error at all, let alone plain error.

*3. Speedy Trial Act*

On appeal, counsel for Adeniji did not raise a Speedy Trial Act claim. However, Adeniji himself raised the claim in a pro se brief submitted to this Court. At oral argument, the panel asked the parties to submit letters addressing the issue. After reviewing the letters and the record, we believe that the prudent course is to remand the case to the district court so that it can consider the parties' arguments in the first instance and make any factual findings necessary to determine this claim.

▮▮▮▮ According to the Government, Adeniji's trial commenced on the last day possi-

ble under the seventy-day rule of 18 U.S.C. § 3161(c)(1), August 17, 1992.[2] However, the record indicates that the trial commenced on August 19, which would result in a Speedy Trial violation under the Government's own calculations. It appears that a two-day continuance of the trial date was granted at an August 11, 1992 conference, when defense counsel requested additional time to interview potential witnesses. In order to exclude these two days from the Speedy Trial period the district court was required to find that "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A); *see United States v. Tunnessen,* 763 F.2d 74, 78 (2d Cir.1985) ("time may not be excluded based on the ends-of-justice unless the district court indicates that it is doing so upon a balancing of the factors specified by section 3161(h)(8)"); *United States v. Perez–Reveles,* 715 F.2d 1348, 1352 (9th Cir.1983) (continuance in trial date at defense counsel's request not excludable delay because court granted continuance only by stating "[v]ery well then," thus failing to characterize continuance as an ends-of-justice exclusion or make specific findings). Accordingly, the district court on remand should examine whether a proper ends-of-justice exclusion was made.

 Moreover, Adeniji's counsel raises two other contentions in his post-argument submission: that the time attributable to the Government's delay in responding to Adeniji's pre-trial motion to dismiss the indictment is not excludable; and that the district court's delay in deciding the motion is not excludable. The delay that occurs between the filing of a motion and the hearing on that motion is excludable from the Speedy Trial period whether or not the delay is reasonable. *See United States v. Anderson,* 902 F.2d 1105, 1109–10 (2d Cir.1990). Whether the Government's delay in filing response papers to a defendant's motion can be excluded under the Speedy Trial Act is an open question in this circuit. *Compare United States v. Martinez–Mercado,* 888 F.2d 1484, 1493 (5th Cir.1989) (government's 15-day delay in filing response to motion exclud-

able) *with United States v. Thomas,* 788 F.2d 1250, 1259 (7th Cir.) (motion deemed under advisement as soon as government's response to motion due), *cert. denied,* 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 121 (1986). At this point, we need not decide whether the Government's filing delay is non-excludable because the record is unclear as to whether there was any delay at all. On remand, the district court should determine whether the Government's response to the motion was untimely and, if so, whether such time can be excluded under the Speedy Trial Act. Likewise, Adeniji's claim that forty-six of the seventy-six days taken by the court in rendering a decision while the motion was under advisement cannot be excluded under 18 U.S.C. § 3161(h)(1)(J) should be addressed on remand. *See Henderson v. United States,* 476 U.S. 321, 328, 106 S.Ct. 1871, 1875–76, 90 L.Ed.2d 299 (1986); *United States v. DiTommaso,* 817 F.2d 201, 209–10 (2d Cir.1987).

## CONCLUSION

In accordance with the foregoing, the judgment of the district court is remanded for further proceedings relating to the Speedy Trial Act issue and is otherwise affirmed.

---

**2.** In reaching this conclusion, the Government acknowledges that the district court erred in starting the Speedy Trial clock from the date of Adeniji's arraignment, October 15, 1991, instead of the date the indictment was returned, October 1, 1991.