United States v. Vinas
17-1966-cr

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

---

August Term, 2017

Argued: May 7, 2018          Decided: December 6, 2018

Docket No. 17-1966-cr

---

UNITED STATES OF AMERICA,
*Appellee,*

— v. —

FRANCIS PATINO VINAS,
*Defendant-Appellant,*

---

Before: HALL AND CARNEY, <u>Circuit Judges</u>, AND KOELTL, <u>District Judge.</u>*

After being convicted following a jury trial of importing and possessing

with intent to distribute cocaine, the defendant-appellant moved for a new trial

on the ground that the Government violated Rule 16(a)(1)(A) of the Federal Rules

---

* Judge John G. Koeltl, of the United States District Court for the Southern
District of New York, sitting by designation.

of Criminal Procedure by making an inaccurate pre-trial disclosure that caused him to forgo a nonfrivolous motion to suppress an inculpatory statement made without <u>Miranda</u> warnings. The United States District Court for the Eastern District of New York (Block, J.) denied the defendant's motion, holding that the Government's disclosure had complied with Rule 16(a)(1)(A) and, in any event, the defendant had not suffered substantial prejudice. We conclude that the Government's disclosure in this case violated Rule 16(a)(1)(A) and that the defendant suffered substantial prejudice as a result. We therefore **VACATE** the district court's judgment and **REMAND** the case for further proceedings consistent with this Opinion.

Judge Hall dissents in a separate opinion.

---

DANIEL HABIB, Federal Defenders of New York, Inc., New York, NY, <u>for</u> <u>Defendant-Appellant</u>.

RYAN C. HARRIS, Assistant United States Attorney (Amy Busa and Andrew C. Gilman, Assistant United States Attorneys, <u>on the brief</u>), <u>for</u> Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY, <u>for Appellee</u>.

---

JOHN G. KOELTL, District Judge:

This appeal requires us to decide whether the defendant is entitled to a new trial because the Government's inaccurate pre-trial disclosure under Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure caused him to forgo moving to suppress an inculpatory statement introduced at trial that he made before receiving warnings specified in Miranda v. Arizona, 384 U.S. 436 (1966). We conclude that a new trial is warranted. The Government's disclosure violated Rule 16(a)(1)(A) and caused the defendant substantial prejudice. We therefore **VACATE** the district court's denial of the defendant's motion for a new trial and **REMAND** for further proceedings consistent with this Opinion.

## I.

We summarize here the evidence adduced at Vinas's three-day trial. The factual circumstances of Vinas's arrest are undisputed except as noted below. On November 15, 2015, the defendant, Francis Patino Vinas, returned to the United States after a five-day trip to the Dominican Republic. He arrived at Terminal Four of the John F. Kennedy International Airport in Queens, New York. Together with his fellow passengers, Vinas approached the Primary Inspection Area, where United States customs officials scanned his passport. Vinas then

3

retrieved a black roller suitcase and a blue backpack from the baggage carousel and approached the Customs Control Point, where he presented the suitcase and backpack for inspection. Vinas was selected for further inspection and referred to the Baggage Inspection Area, where United States Customs and Border Protection ("CBP") officer Francisco Santos was on duty.

After confirming that the contents of the suitcase and backpack belonged to Vinas, Officer Santos directed Vinas to place his luggage on the counter. Officer Santos opened the black roller suitcase, in which he noticed a black plastic bag. From inside the black plastic bag, Officer Santos removed a bottle, apparently containing a drink known as Mamajuana. Officer Santos was familiar with Mamajuana, which he described as a rum- or brandy-based concoction that contains, among other things, ginger, cinnamon, and sticks or wood chips.

This bottle of Mamajuana struck Officer Santos as unusual. To Officer Santos, the sticks in this bottle of Mamajuana "looked pressed against the glass and [were] placed almost on purpose to conceal something in there. It didn't look random at all." Appellant's App. ("A") 78. Officer Santos also noticed that the bottle was heavy, indicating that "there was something in there that wasn't supposed to be in there." A79. Officer Santos summoned a second CBP officer

4

who had experience with similar bottles. Officer Santos then sought and received permission from his supervisor to take Vinas into a private room (the "Search Room") "to examine the bottle further" because Officer Santos believed there were drugs inside the bottle. A80. He also wanted to prevent Vinas from "run[ning] away or something like that." A80. Officer Santos, who was armed, and three other armed CBP officers then escorted Vinas into the Search Room.[2]

Officer Santos testified that, inside the Search Room, he asked Vinas where Vinas got the bottle of Mamajuana, and Vinas responded that he bought the bottle at a store outside the airport in the Dominican Republic. Officer Santos continued to examine the bottle in the Search Room, discovering further evidence of tampering. With permission from a supervisor, Officer Santos then placed the bottle in an evidence bag and broke the bottom of the bottle, spilling the contents of the bottle into the bag. Officer Santos observed "a lot of blue oblong objects" floating amidst the liquor and sticks in the bag. A96. Vinas asked, "[W]hat is that?" A98. Officer Santos removed one of the blue objects from the bag and cut it open, revealing a white powdery substance, which field testing revealed to be cocaine. Vinas "gave no reaction at all." A98. Officer

---

[2] Officer Santos took Vinas's passport when he first examined Vinas's luggage and maintained possession of it as the group entered the Search Room.

5

Santos then placed Vinas under arrest and moved him to a holding cell. It was later determined that the bottle of Mamajuana contained 617.8 grams of cocaine, worth about $60,000 retail.

United States Department of Homeland Security ("DHS") Special Agent Kevin O'Malley and Officer Santos then interviewed Vinas in the holding cell. Special Agent O'Malley and Officer Santos advised Vinas of his Miranda rights at the outset of this interview, and Vinas expressly waived those rights. Vinas then told Special Agent O'Malley that a friend named Chelo gave Vinas the bottle of Mamajuana and asked Vinas to bring the bottle to the United States. Officer Santos testified that, at some point, he told Special Agent O'Malley that Vinas had previously made a contradictory statement, namely that Vinas purchased the Mamajuana from a store. However, Special Agent O'Malley testified that he did not recall Officer Santos's pointing out any inconsistency in Vinas's statements about when and where Vinas acquired the bottle.

Approximately two hours later, at around 2:20 a.m., Special Agent O'Malley and DHS Special Agent Walter Rivera conducted a second interview of Vinas. Special Agents O'Malley and Rivera warned Vinas of his Miranda rights before this interview as well, and again Vinas expressly waived those rights.

6

Vinas maintained during this interview that Chelo had given him the bottle of Mamajuana. Vinas claimed that he did not know that there were narcotics inside the bottle and that he was not paid to transport the bottle. Vinas told Special Agent O'Malley that Chelo was very persistent in asking Vinas to transport the bottle, and that Chelo repeated this request on three of the five days that Vinas was in the Dominican Republic. Vinas said that Chelo had explained that, when Vinas returned to the United States, Vinas would be sent a phone number for a woman who would pick up the bottle. Vinas told Special Agent O'Malley that he thought Chelo's request was strange but did not think anything of it because he had known Chelo for some time.

Vinas gave the officers permission to search his cell phone and provided the passcode. Vinas's phone contained text messages in the messaging application WhatsApp between Vinas and Chelo from before and during Vinas's trip to the Dominican Republic.

On January 26, 2016, a grand jury returned a two-count Indictment charging Vinas with importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(3), and 18 U.S.C. §§ 2, 3551 et seq.; and possession of cocaine

7

with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. §§ 2, 3551 et seq.

In February 2016, the Government produced discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, including Vinas's signed Miranda waiver and a document describing Vinas's statements to Special Agent O'Malley that he had been given the bottle of Mamajuana by Chelo. The Government also produced video recordings of the first inspection of Vinas's luggage by Officer Santos, as well as footage of Vinas's being escorted into the Search Room.

Months later, in October 2016, the Government made a supplemental production of Rule 16 material. The Government's disclosure stated:

> During the initial inspection of his luggage by U.S. Customs and Border Protection officers, Vinas stated, in sum and substance, that he purchased the bottle of "Mamajuana" at a store in the Dominican Republic.

A558. The defense did not move to suppress this statement before trial.

The trial began on Thursday, December 1, 2016, and ended on Monday, December 5, 2016. The defense did not contest that the Mamajuana bottle contained a quantity of cocaine that exceeded the quantity ordinarily presumed to be for personal use. The only issue at trial, therefore, was whether Vinas knew that the Mamajuana bottle contained cocaine. During the Government's opening

8

statement, the Government described the expected testimony from Officer Santos that, after Vinas was taken to "a private search room," Vinas claimed to have purchased the Mamajuana bottle at a store in the Dominican Republic (the "Store Statement"). A47. Defense counsel immediately notified the district court that, until the Government's opening, defense counsel was unaware that Vinas purportedly made the Store Statement in the Search Room in the presence of four armed CBP officers, prior to receiving Miranda warnings. Defense counsel argued that, had he been aware of that factual context, he would have moved before trial to suppress the Store Statement. The district court assured defense counsel that counsel would have the opportunity to make any necessary motion, noting that Vinas "may have a basis for a new trial." A85. The district court nevertheless allowed the Government to proceed with Officer Santos's direct testimony, in which Officer Santos testified that Vinas made the Store Statement in the Search Room before receiving Miranda warnings.

As the Government explained in its initial summation to the jury, "[t]he only central dispute [at trial was] the defendant's knowledge. Did the defendant know that there was cocaine in that Mamajuana bottle that he brought from the Dominican Republic to the United States?" A362. The defense theory at trial

was that Vinas was an unwitting courier. To disprove that theory, the Government pointed repeatedly to the Store Statement as a prior inconsistent statement that showed that Vinas knew that the Mamajuana bottle contained cocaine. While the Government also pointed to the text message exchanges with Chelo, the unusually heavy bottle with wood chips pressed to the glass, and Vinas's inaccurate customs declaration[3] as evidence of Vinas's knowledge, the Store Statement Vinas made in the Search Room, to which the Government referred nine times in its initial and rebuttal summations, was central to its argument that Vinas knew he was importing cocaine.

At the beginning of its initial summation, the Government identified the Store Statement as a "lie," A355, arguing that Vinas's knowledge of the cocaine was "why he lied to Customs and Border Protection about buying the bottle in the store" and "why he changed his story when he spoke with his [sic] special agents," A370. In its initial summation, the Government argued that there were various pieces of evidence showing that the defendant knew that there was cocaine in the bottle, including the Store Statement, and that each piece of

---

[3] On his customs declaration, Vinas indicated that he was not transporting food from the Dominican Republic. Vinas actually had a bag of food items, including "sweets," which the Government introduced at trial. A364; see A521.

10

evidence "alone [was] compelling proof that the defendant knew of the drugs in the bottle." A379. In its rebuttal summation, the Government asked, "If the defendant truly didn't know that this bottle was loaded with drugs, why didn't he tell Officer Santos the truth?" A413. The Government argued that "the fact that the defendant repeatedly lied, in particular his lie about buying this bottle at a store in the Dominican Republic, [was] absolutely devastating evidence of his guilt." A414.

The jury convicted Vinas on both counts of the Indictment, and Vinas was ultimately sentenced primarily to time served and a three-year term of supervised release, including six months of home confinement. After his conviction, Vinas moved for a new trial, arguing that the Government's Rule 16 disclosure stating that Vinas made the Store Statement "[d]uring the initial inspection" had misled the defense into forgoing a pretrial motion to suppress that statement. A558.

In an oral ruling, the district court denied Vinas's motion. The court explained that Vinas himself was aware of when and where he made the Store Statement and could have communicated that to defense counsel. The court explained further that, rather than failing altogether to disclose the statement at

11

issue, the Government "merely used an imprecise description." SPA24. The court described the Government's letter as "vague," "unfortunate," and "imperfect." SPA24. "Rule 16 requires no more than the information offered by the United States," the court reasoned, and Vinas's counsel was allowed to cross-examine Officer Santos about the statement, which was "[m]ore than enough to allow the jury to decide, if it was so inclined, that Santos had misrepresented" the content or circumstances of the Store Statement. SPA25. Moreover, the court explained, "it cannot be said with any fair degree of probability that [the Store Statement] would have been suppressed." SPA26.

This appeal followed.

## II.

Rule 33(a) of the Federal Rules of Criminal Procedure provides that, on "the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This Court reviews a district court's denial of a motion under Rule 33 for abuse of discretion. United States v. Gabinskaya, 829 F.3d 127, 134 (2d Cir. 2016). A district court abuses its discretion in denying a Rule 33 motion "when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its

12

decision -- though not necessarily the product of a legal error or a clearly erroneous factual finding -- cannot be located within the range of permissible decisions." United States v. Ulbricht, 858 F.3d 71, 112 (2d Cir. 2017) (alteration in original) (quoting United States v. Forbes, 790 F.3d 403, 406 (2d Cir. 2015)).

Vinas argues that the Government's disclosure violated Rule 16(a)(1)(A) and prejudiced him by misleading him into not moving to suppress the Store Statement and therefore the district court erred in denying him a new trial. We agree.

## A.

Rule 16(a)(1)(A) provides:

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

Fed. R. Crim. P. 16(a)(1)(A). The district court concluded that the Government complied with the requirements of Rule 16, and that, in any event, Vinas suffered no prejudice from any violation. That ruling was error because it rested on reasoning that this Court rejected in United States v. McElroy, 697 F.2d 459 (2d Cir. 1982).

13

In McElroy, the defendant was convicted of conspiracy to possess and distribute heroin and for possession and distribution of heroin in connection with the attempted sale of heroin to an undercover agent with the United States Drug Enforcement Administration ("DEA"). Before trial, the Government responded to the defendant's request for Rule 16 materials by producing a post-arrest statement by the defendant, which the Government said the defendant "volunteered" to a DEA agent, in which the defendant claimed that he was present at the transaction only out of concern for the safety of an accomplice. Id. at 461. At trial, it emerged that prior to making this statement, the defendant had orally invoked his rights under Miranda to remain silent and to meet with a lawyer before being questioned further. Id. at 461-62. The defendant subsequently initiated a conversation with a DEA agent, who advised him of his Miranda rights a second time. Id. at 461. The defendant then waived those rights and made the inculpatory statement at issue. Id. This Court held that the Government's failure to disclose the defendant's initial oral invocation of his Miranda rights violated Rule 16(a)(1)(A) and reversed the defendant's conviction.

The district court in this case determined that the Government's disclosure of the Store Statement technically complied with Rule 16 because "[n]othing . . . was concealed," or "withheld." SPA25. That conclusion was error.

In McElroy, this Court held that "Rule 16(a)(1)(A) requires the government to disclose the substance not only of the incriminating post-arrest oral statements which it intends to use at trial, but also the substance of the defendant's responses to any Miranda warnings which preceded the statements." 697 F.2d at 464. Importantly, in McElroy, not only did the Government not "intend[] to use the statement at trial," Fed. R. Crim. P. 16(a)(1)(A), but the Government was prohibited from doing so, McElroy, 697 F.2d at 464 (citing Doyle v. Ohio, 426 U.S. 610 (1976) (holding that prosecutors are prohibited from referring at trial to a defendant's invocation of Miranda rights for purposes of impeachment)).

McElroy's holding followed from a careful analysis of the policies underlying Rule 16. As this Court explained, Rule 16

> reflects the drafters' studied conclusion that pretrial discovery of oral statements serves significantly to protect the defendant's right to a fair trial. Pretrial discovery prevents the defendant from being unfairly surprised with his statements at trial and enhances the ability of defense counsel to suppress inadmissible statements. In particular, statements obtained in violation of Miranda are most likely to be identified and suppressed if they are made available to counsel prior

15

to trial. In short, Rule 16 discovery is an important guarantor of simple fairness to defendants.

Id. at 463 (citation omitted). Therefore, even though the defendant's invocation of his Miranda rights in McElroy was outside the literal bounds of Rule 16 because the Government could not introduce that invocation at trial, this Court held that "for purposes of Rule 16, the statement which the government seeks to use on direct, and the defendant's response to preceding set(s) of Miranda warnings, comprise but a single 'statement.'" Id. at 465.

In this appeal, the Government argues that the disclosure it made to Vinas adhered to Rule 16 because the Government provided the precise information subject to disclosure -- namely, the substance of the Store Statement. That argument "interprets Rule 16 with a degree of literalism inappropriate to the Rule's purpose." Id. at 464. Here, as in McElroy, the Government's disclosure offered an accurate summary of the defendant's purported statement, combined with a misleading description of the circumstances under which the defendant purportedly made it, and so misinformed defense counsel about the possible grounds for suppression.

In McElroy, the Government stated that the defendant had "volunteered" the statement the Government sought to introduce, without disclosing the

defendant's prior invocation of <u>Miranda</u> rights or his desire to remain silent and obtain a lawyer. In this case, the Government's disclosure described Vinas as having made the Store Statement during the "initial inspection," which reasonably could be interpreted as referring to the inspection in the open, public area of the airport where Vinas first encountered Officer Santos. During that interaction, Vinas was not conceivably in "custody" such that he would be entitled to <u>Miranda</u> warnings. <u>See</u> <u>United States v. FNU LNU</u>, 653 F.3d 144, 148 (2d Cir. 2011) ("An interaction between law enforcement officials and an individual generally triggers <u>Miranda</u>'s prophylactic warnings when the interaction becomes a 'custodial interrogation.'"); <u>see also</u> <u>id.</u> at 153-54 (explaining that a traveler "arriving at an American airport . . . will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, designation, baggage, and so on").

The Government argues that the term "initial inspection" accurately described "one continuous inspection of Vinas's luggage that began when CBP officers first opened his luggage and concluded when those officers finished examining the contents of that luggage, after discovering . . . cocaine inside the

17

Mamajuana bottle." Government's Br. 30-31. That is not a fair description of the circumstances under which the Store Statement was made.

The district court described the Government's characterization as "vague," "unfortunate," and "imperfect." And Officer Santos testified that he did not tell prosecutors that Vinas made the Store Statement "during the initial inspection." A114. Moreover, the evidence indicated that the search and questioning in the Search Room was a separate event from the initial inspection in the Baggage Inspection Area. In the Baggage Inspection Area, the bottle of Mamajuana was removed from the black roller suitcase. The black roller suitcase was repacked and zipped, and Vinas pulled the suitcase to the Search Room while one of the CBP officers carried the bottle of Mamajuana. Four CBP officers escorted Vinas to the Search Room. There simply is no credible way to describe what took place in the Search Room, where Officer Santos discovered the cocaine and where Vinas made the Store Statement, as part of the "initial inspection." We therefore conclude that the Government's disclosure in this case was misleading and violated its obligations under Rule 16(a)(1)(A).[4]

_____

[4] The Government argues that it was plain from its Rule 16 disclosure that the relevant inspection was not the inspection by Officer Santos in the Baggage Inspection Area but rather the inspection in the Search Room because the Government's disclosure referred to multiple "officers." However, Officer

18

**B.**

The district court also erred in concluding that any violation of Rule 16 did not substantially prejudice Vinas.

A violation of Rule 16 does not automatically entitle a defendant to a new trial. A defendant seeking a new trial "must show that the failure to disclose caused him substantial prejudice." United States v. Stevens, 985 F.2d 1175, 1181 (2d Cir. 1993); see United States v. Lee, 834 F.3d 145, 158 (2d Cir. 2016), cert. denied, 137 S. Ct. 1599 (2017); McElroy, 697 F.2d at 465. To show substantial prejudice a defendant must "demonstrate that the untimely disclosure of the statement adversely affected some aspect of [the defendant's] trial strategy." United States v. Adeniji, 31 F.3d 58, 64 (2d Cir. 1994). "In assessing that question, the court analyzes the nature of the evidence sought, the extent to which it bore on critical issues in the case, the reason for its nonproduction, and the strength of the government's untainted proof." Stevens, 985 F.2d at 1181.

---

Santos summoned the assistance of two other officers during the inspection in the Baggage Inspection Area. The Government's use of the plural "officers" in its Rule 16 disclosure therefore could not have distinguished the inspection in the Search Room from the inspection in the Baggage Inspection Area.

19

The parties do not dispute that the Store Statement went to the heart of the singular issue in the case -- whether Vinas knew that the Mamajuana bottle contained cocaine. The district court did not find, and the Government does not now contend, that the strength of the Government's untainted evidence was so great that the Store Statement was irrelevant to the outcome of trial. Rather, the district court focused on the other means by which the defense could have obtained the correct information and the merits of Vinas's hypothetical suppression motion. The district court explained that the central concern that ultimately drove its decision to deny Vinas's motion for a new trial was that Vinas himself was aware of when and where he made the Store Statement and "could have told [defense counsel] that." SPA23.

This Court rejected similar reasoning in McElroy concluding that "the availability of particular statements through the defendant himself does not negate the government's duty to disclose statements subject to Rule 16." 697 F.2d at 465. As this Court explained,

> [T]he government's failure to disclose prejudiced McElroy because it kept from his counsel's eyes possible grounds for a suppression motion. We reject as unrealistic the government's argument that appellate relief must be denied because counsel could have obtained from McElroy the information necessary to make the motion. The defendant in a criminal case often mistrusts his counsel who, in most

instances, has been assigned and not chosen, or believes that his counsel will best defend him if he is kept ignorant of the facts. Even a defendant who cooperates with his counsel cannot always remember all of the relevant facts, or realize the importance to his defense of seemingly inconsequential police actions. Defense lawyers, as a result, often learn much more about what has happened from government discovery, formal and informal, than they do from their clients. This fact surely is one of the reasons behind the adoption of Rule 16 . . . .

Id. It was therefore error for the district court to rely on Vinas's knowledge of where and when he made the Store Statement in denying Vinas's motion for a new trial.

The district court also concluded that Vinas did not suffer prejudice because "it cannot be said with any fair degree of probability that Vinas's . . . statement would have been suppressed." SPA26. That reasoning overstates the defendant's burden. In McElroy, this Court found that the defendant should be afforded a new trial because the suppression motion sought "would not have been frivolous." McElroy, 697 F.2d at 465 (emphasis added).

The Government contends that any suppression motion in this case would, in fact, have been frivolous because Vinas was not in "custody" when he provided the Store Statement and thus was not entitled to Miranda warnings. A person is in "custody" for purposes of Miranda when a reasonable person in the subject's position would have understood that the person was "subjected to

21

restraints comparable to those associated with a formal arrest." FNU LNU, 653 F.3d at 153 (quoting Georgison v. Donelli, 588 F.3d 145, 155 (2d Cir. 2009)). Determining whether a suspect is in "custody" for Miranda purposes requires a contextual analysis of the particular facts of the case. Id. (explaining that the relevant factors for determining whether a suspect is in "custody" include the duration and location of the questioning, whether the suspect volunteered for the questioning, whether restraints were used, whether weapons were present or drawn, and whether the suspect was told the suspect was free to leave).

Some circumstances suggested that Vinas may have been in "custody" when he made the Store Statement. Vinas was taken to a closed room surrounded by four armed officers. His passport had been taken from him, and he was taken to the room to prevent him from fleeing. The officers had reason to believe that he possessed a controlled substance that he had just imported into the United States. See, e.g., United States v. Ali, 86 F.3d 275, 276-77 (2d Cir. 1996). But we cannot conclude whether Vinas was in "custody" at the time the Store Statement was made because no evidentiary hearing was held to determine all the factual circumstances of the Store Statement. We certainly cannot conclude, as the Government argues, that Vinas was definitively not in

22

"custody" at the time the statement was made. As Vinas points out, it was precisely the Government's misleading disclosure about the circumstances under which the statement was made that caused defense counsel to forgo making a suppression motion and developing a record.[5]

The district court also reasoned that Vinas did not suffer prejudice because defense counsel was allowed to cross-examine Officer Santos about the Store Statement, which was "[m]ore than enough to allow the jury to decide, if it was so inclined, that Santos had misrepresented" what Vinas said or the circumstances under which Vinas said it. SPA25. But where the Government obtains a defendant's statement in violation of the Fifth Amendment, the remedy is suppression of that statement, not simply allowing the defense to question whether the statement was made. In McElroy, defense counsel was also able to cross-examine the Government's witness and "by his questions sought to imply . . . that the admissions were never made." 697 F.2d at 461. Just as in McElroy, that Vinas's counsel was able to cross-examine Officer Santos regarding the Store

---

[5] In FNU LNU, this Court said that it will "normally remand the case to the district court to determine, in the first instance, whether custody existed." 653 F.3d at 152. No remand was necessary in that case because, unlike in this case, the district court "admirably compiled an extensive record documenting the circumstances of the defendant's questioning." Id.

23

Statement did not cure the error that led defense counsel to forgo a non-frivolous motion to suppress the statement entirely.

The Government also argues that Vinas did not suffer any prejudice from its Rule 16 disclosure because Vinas did not move to suppress the Store Statement before trial. That argument is circular. The very question at issue is whether the Government's misleading disclosure deterred Vinas from credibly making such a motion.

The Government contends further that Vinas waived any objection to the introduction of the Store Statement by failing to move midtrial to suppress the statement. That argument misconstrues the record. After defense counsel heard the opening statement by the Government and before Officer Santos testified about the Store Statement, defense counsel raised the issue with the court outside the presence of the jury:

> [DEFENSE COUNSEL]: Well, I think had the notice indicated that it was made in that subsequent inspection where there were four officers in a room that looks like an interrogation room, I would have moved to suppress it, Your Honor.
>
> THE COURT: Look, the jury is coming in.
>
> You can make whatever application you want. We are not going to deal with it this very second because we have to continue with the trial. If you think you have a good basis for a motion, you will have an opportunity to make it. Let's go forward with the testimony first.

24

[DEFENSE COUNSEL]: Your Honor, this is all I will say. I would have moved to suppress the statement. I didn't get an opportunity to due to an error in the notice as to when it was made.

THE COURT: I understand that. So you may have a basis for a new trial.

A85.

Immediately after this exchange, however, the Government elicited Officer Santos's testimony about the Store Statement. At that point, short of moving for a mistrial, defense counsel could no longer prevent the jury from hearing the statement. The district court thus provided no meaningful opportunity during the trial for defense counsel to move to suppress the statement. We conclude, in any event, that defense counsel properly preserved his objection to the introduction of the Store Statement by promptly alerting the district court to the missed opportunity for a pretrial suppression motion. We are therefore also satisfied that Vinas has shown that "the untimely disclosure of the statement adversely affected some aspect of [Vinas's] trial strategy." See Adeniji, 31 F.3d at 64.

Finally, the strength of the Government's untainted proof does not compel a different result. See Stevens, 985 F.2d at 1181. The other evidence that the Government offered at trial -- namely the suspicious appearance and weight of the Mamajuana bottle, Vinas's inaccurate customs declaration, and the text

25

messages between Vinas and Chelo -- may have been consistent with Vinas knowing that the Mamajuana bottle contained an illicit substance. However, none of that evidence proved Vinas's subjective knowledge -- the only issue disputed at trial. As the Government argued to the jury in its rebuttal summation, "the fact that the defendant repeatedly lied, in particular his lie about buying this bottle at a store in the Dominican Republic, [was] absolutely devastating evidence of his guilt." SPA7.[6] We accept the Government's characterization of the Store Statement as "devastating." Had the Store Statement been suppressed, the quantum of proof at trial would have been significantly altered in Vinas's favor.[7]

We therefore conclude that the Government's misleading Rule 16 disclosure denied Vinas a fair trial. The motion for a new trial should have been granted.

---

[6] The untainted evidence in McElroy tied the defendant to the heroin in that case more directly than the untainted evidence here tied Vinas to the cocaine. 697 F.2d at 460 (the defendant's accomplice, who cooperated with the Government, testified that the defendant handed her the heroin before the transaction).

[7] In light of this disposition, we need not reach Vinas's claims regarding the prosecutors' allegedly improper remarks in the summations.

## CONCLUSION

We have considered the parties' remaining arguments and find them to be either moot or without merit. For the reasons explained above, the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Opinion.

Hall, J. (dissenting):

In my view, respectfully, the majority mis-analogizes this case to *United States v. McElroy*, 697 F.2d 459 (2d Cir. 1982). Whereas in *McElroy* the Rule 16 violation was blatant and the disclosure inaccurate, in the case before us reasonable minds can clearly disagree as to whether there was a Rule 16 violation. While I find all three of us to be possessed of reasonable minds, I am on the other side of the proverbial fence from the majority.

In *McElroy*, as part of its Rule 16 disclosures, the Government "had told [defense] counsel . . . that McElroy's statements had been 'volunteered' and had not been recorded in any written report." *Id.* at 461. At trial, defense counsel then questioned the Government's witness (a Drug Enforcement Agency agent) about whether McElroy's admissions had been recorded in any written report. *Id.* "Counsel by his questions sought to imply that the government's failure to record a piece of evidence as important as the defendant's own admissions might mean that the admissions were never made. Counsel asked the government to stipulate that none of the DEA agents' reports mentioned the alleged admissions." *Id.* At that point, when counsel asked the prosecutor to stipulate that the defendant's admissions had not been recorded in writing, the prosecutor revealed for the first

1

time a written DEA report that contained McElroy's admissions. *Id.* The prosecutor admitted that he had neglected to disclose the report, and the defense moved for a mistrial or a suppression hearing, both of which were denied. *Id.* at 642. Defense counsel then elicited testimony from a DEA agent that McElroy had initially not only refused to answer questions, but he had also told agents, after receiving *Miranda* warnings, that he wanted a lawyer. *Id.* The Government had thus made inaccurate statements regarding the existence of a written report and the substance of McElroy's response to *Miranda* warnings. The district court and the panel of this Court agreed that the Government had violated Rule 16. *Id.* at 463.[1]

In the case before us, by contrast, the Government made no inaccurate disclosure. Or, as the district court put it, "the Government did not fail to disclose a single relevant statement and merely used an imprecise description . . . there is no pertinent evidence that was hidden from Mr. Vinas . . . nothing . . . was concealed, no material, no matter withheld." Spec. App'x at 23 – 24. Although the disclosure of which Vinas complains was vague, the "substance of [the] relevant

---

[1] The district court in *McElroy* concluded that although the Government had violated Rule 16, McElroy had not been prejudiced by that misconduct. *Id.* at 463. Because I would find no Rule 16 violation here, it is unnecessary to address whether Vinas was prejudiced by the form of the Rule 16 disclosure.

2

oral statement made by the defendant" was conveyed, Fed. R. Crim. P. 16(a)(1)(A).

That is not to say that the government always complies with Rule 16 when it makes vague statements short of affirmatively misleading, only that in this case I do not think the ambiguity rose to the level of non-compliance. "Although Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." *United States v. Percevault*, 490 F.3d 126, 130 (2d Cir. 1974). I thus see no abuse of discretion in the trial court's decision to deny Vinas's Rule 33 motion. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

If the majority were to agree with me, we would also need to reach Vinas's argument that he was unfairly prejudiced by the prosecutor's summation at trial. *See* Majority Op. at 26 n.7. "[A] claim that a prosecutor's summation unfairly prejudiced a defendant" is reviewed *de novo*. *United States v. Daugerdas*, 837 F.3d 212, 227 (2d Cir. 2016). But "[a]n improper summation will only warrant a new trial when the challenged statements are shown to have caused substantial prejudice to the defendant; rarely will an improper summation meet the requisite level of prejudice." *Id.* (quoting *United States v. Mapp*, 170 F.3d 328, 337 (2d Cir. 1999)). In other words, the defendant "must show not simply that a particular

3

summation comment was improper, but that the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him . . . such that the resulting conviction [was] a denial of due process." *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012). "Often, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981). Here, even if we were to conclude the comments of which Vinas complains were improper, the judgment should be affirmed because Vinas has not met his burden of demonstrating substantial prejudice. The government's case was buttressed by incriminating text messages, inconsistent statements made by Vinas, and other evidence the jury found credible.

In summation at trial, Vinas's counsel argued that the prosecution was putting a "spin" on the testimony and incriminating text messages and had "just disregarded" as "inconvenient" evidence of innocence, such as "how cooperative [and consistent Vinas] was from the word go." App'x at 383. Defense counsel

4

indeed went so far as to argue that the prosecution was "misleading" the jury. App'x at 408. On rebuttal, the Assistant United States Attorney repeatedly argued to the jury "the defense is trying to dupe you" and "grasping at straws," but he also discussed extensively the substantial evidence against Vinas. App'x at 410, 415, 425. While the prosecutor's ad hominem barb might better have been left unstated, it did not substantially prejudice Vinas. *See United States v. Resto*, 824 F.2d 210, 212 (2d Cir. 1987) (holding that a prosecutor's comments that referred to the defendant's testimony as "lies" were permissible responses to contentions made by defense counsel in summation); *Modica*, 663 F.3d 1173, 1181 – 82 (holding that a prosecutor's plea to the jury not to let the defendant "walk out of this room laughing at you," was improper, but "did not result in substantial prejudice to appellant or deprive him of a fair trial.").

I would affirm the judgment.

5