UNITED STATES, Appellee,

v.

Timothy A. BROWN, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 98–0251.
Crim.App. No. 96–1443.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 18, 1998.

Decided May 11, 1999.

Cox, Chief Judge, filed opinion dissenting in part and concurring in the result.

Crawford, J., filed opinion concurring in result as to Issue I.

SULLIVAN, J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. COX, C.J., filed an opinion dissenting in part and concurring in the result. CRAWFORD, J., filed an opinion concurring in the result.

For Appellant: *Major Stephen D. Chace*, USMC (argued).

For Appellee: *Major Mark K. Jamison*, USMC (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Captain Paul D. Kovac*, USMC (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During December of 1995 and February of 1996, appellant was tried by a special court-martial composed of members at Camp Pendleton, California. Contrary to his pleas, he was found guilty of one specification of wrongfully using methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The members sentenced appellant to a bad-conduct discharge, 4 months' confinement, forfeiture of $583.00 pay per month for 6 months, and reduction to the lowest enlisted grade. On June 19, 1996, the convening authority approved this sentence. The Court of Criminal Appeals affirmed in an unpublished opinion dated October 31, 1997.

This Court, on April 28, 1998, granted review on the following two issues of law:

I

WHETHER THE MILITARY JUDGE ERRED WHEN HE INSTRUCTED THE MEMBERS ON DELIBERATE AVOIDANCE WHERE THE EVIDENCE DID NOT SUPPORT SUCH AN INSTRUCTION.

II

WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN HE INSTRUCTED THE MEMBERS THAT THEY COULD CONSIDER APPELLANT'S NONJUDICIAL PUNISHMENT FOR UTTERING WORTHLESS CHECKS TO ASSESS HIS CHARACTER FOR TRUTHFULNESS.

We hold that the military judge erred in giving a "deliberate avoidance" instruction, but that such error was harmless. *See generally United States v. Newman*, 14 MJ 474 (CMA 1983). We further hold that no plain error occurred as a result of the trial judge's instruction that appellant's prior nonjudicial punishment (NJP) could be used to impeach his credibility. *See United States v. Trimper*, 28 MJ 460 (CMA 1989).

Evidence in the record of trial shows that appellant was a 21–year–old Marine with 3 years of active duty service. It was uncontroverted that, with the exception of one NJP for writing worthless checks, in violation of Article 134, UCMJ, 10 USC § 934, appellant had a good military record and military reputation. The charged drug offense allegedly occurred during the Memorial Day weekend of 1995, when appellant visited his best friend, Lance Corporal (LCpl) Frank Tellez, at his home in Riverside, California.

The record further shows that, on the evening of May 28, 1995, appellant accompanied LCpl Tellez's brother Jamie to a club, and later to a party at the house of Jamie's friend, Dave Gallusha. Most people at the party were drunk, but appellant remained sober. Appellant met Gallusha for the first time at this party. LCpl Tellez previously had told appellant that he did not approve of Jamie's long-haired friends, and that some of them were drug users. LCpl Tellez did not accompany appellant to Gallusha's party.

The party continued into the early morning, and appellant complained that he was very tired and had to drive back to Camp Pendelton for duty the next morning. Appellant testified that he asked Gallusha if he had "No–Doz," or anything like it. Gallusha left the room, returned with a bottle labeled "No–Doz," took two pills out of the bottle, and gave them to appellant. Appellant and Jamie testified to Gallusha's words that the pills were "No–Doz," that he should take them, and that they would wake him up.

After appellant took the pills, he drove back to Camp Pendelton. He stated that the pills made him feel "peppy," that his hands shook, and that he could not sleep that morning. Four days later, on June 2, there was a command-authorized unit urinalysis, and appellant's urine tested positive for amphetamine/ methamphetamine. He had an amphetamine concentration of 2454 nanograms per milliliter, and 10573 nanograms per milliliter of methamphetamine. Appellant does not dispute the accuracy of the tests or the results.

In its case-in-chief, the Government presented documents from the Naval Drug Screening Lab, a stipulation of fact, and the expert testimony of Dr. Czarny. He testified that the high concentration of amphetamine found in appellant's urine could not be explained by a single ingestion 4 days prior to the urinalysis. He asserted that, because of the rapid rate that the substance is removed from the body, it would have taken a near fatal dose to get such a high reading 4 days later. He opined that the results indicated a more recent use within 24 hours, or a chronic use of the methamphetamine.

Appellant's defense consisted of his strong military record and innocent ingestion. He presented three members of his chain of command who testified to their opinion of his military character and character for truthfulness. In addition, Jamie and LCpl Tellez testified that appellant was not a drug user, and appellant testified that he ingested the methamphetamine when he innocently believed he took "No–Doz."

Prior to deliberations, the judge *sua sponte* informed counsel that he intended to instruct the members on the theory of deliberate avoidance. Defense counsel objected on the grounds that the issue was not raised by the evidence. Nonetheless, without making findings of fact or conclusions of law, the judge ruled that he was "inclined to give [the] instruction."

The military judge then instructed the members as follows:

Deliberate avoidance. I have instructed you that the accused must have known that the substance he used was methamphet-amine or amphetamine. You may not find the accused guilty of this offense unless you believe beyond a reasonable doubt that the accused actually knew he used methamphetamine/amphetamine.

*The accused may not, however, willfully and intentionally remain ignorant of a fact important and material to the accused's conduct in order to escape the consequences of criminal law.* Therefore, if you have a reasonable doubt that the accused actually knew that the substance he used was methamphetamine—I am going to use that term, we both know that it applies equally to amphetamine/methamphetamine, or of a contraband nature *but you are nevertheless satisfied beyond a reasonable doubt that* (1) the accused did not know for sure that the substance was methamphetamine/amphetamine or of a contraband nature; (2) the accused was aware that there was a high probability the substance was methamphetamine or of a contraband nature and; (3) the accused deliberately and consciously tried to avoid learning that, in fact, the substance was of a contraband nature, *then you may treat this as the deliberate avoidance, positive knowledge.*

Such deliberate avoidance of positive knowledge is the equivalent of knowledge. In *other words, you may find that the accused had the required knowledge, if you find either that the accused actually knew the substance used was methamphetamine or amphetamine or deliberately avoided that knowledge,* as I have defined that term to you.

However, it is very important and I emphasize that knowledge cannot be established by mere negligence, foolishness or even stupidity on the part of the accused. The burden is on the prosecution to prove every element of this offense including that the accused actually knew that the substance he used was methamphetamine or amphetamine.

Consequently, unless you are satisfied beyond a reasonable doubt that the accused either had actual knowledge that the substance was methamphetamine/amphetamine or of a contraband nature or that

the accused deliberately avoided that knowledge, as I have defined that term, then you must find the accused not guilty.

Concerning the second granted issue, certain portions of appellant's service record book were admitted into evidence as part of his defense case-in-chief. This included a prior NJP for "dishonorably fail[ing] to maintain sufficient funds" in his checking account between the period of January to March 1994.

Appellant introduced evidence of his NJP during the merits portion of his trial, apparently to bolster his good military character defense. He later testified that his brother wrote him a check which bounced, and therefore, he had problems with his own checking account when his checks also bounced. In addition, the judge permitted the defense's military character witnesses to give their opinions of appellant's character for truthfulness, and one elaborated on his opinion in light of his knowledge of the NJP.

During trial, the judge twice instructed the jury that the NJP's relevance was limited to appellant's military character and the members' assessment of the witnesses' credibility and opinions. Before deliberations, the judge again instructed the panel members that they could consider the NJP as evidence of appellant's military character and character for truthfulness. Appellant did not object to these jury instructions prior to deliberations on findings, and he was ultimately found guilty of the charged offense.

— — —

Our starting point in resolving the first granted issue is Article 112a, the UCMJ provision that appellant was charged with and found to have violated. It prohibits the "wrongful" use of a controlled substance, which both this Court and the President agree requires a "knowing" use of a contraband drug. *See United States v. Ford,* 23 MJ 331, 333 (CMA 1987); para. 37c(5), Part IV, Manual for Courts–Martial, United States (1995 ed.). Here, the military judge instructed the members that this element of the charged offense could be satisfied by evidence that appellant "deliberately avoided" knowledge that the substance he con-

sumed was methamphetamine or amphetamine. *See Newman,* 14 MJ 474; para. 37c(11), *supra; cf.* para. 3–76. 1d, Note 8, Military Judges' Benchbook at 3–154.4 (Dept. of the Army Pamphlet 27–9 (May 1982, Update memo 4, 5 May 1993)) ("deliberate avoidance" instruction).

A military judge clearly has authority to instruct the members on the elements of proof required for a finding of guilty. *See generally* Arts. 26(a) and 51(b) and (d), UCMJ, 10 USC §§ 826(a) and 851(b) and (d); RCM 801(a)(5) and 920(a), Manual, *supra.* However, he may not instruct the members in such a way that the will of Congress is ignored or diluted concerning the requirements of guilt provided in the UCMJ. *See generally Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *see* RCM 920(e)(1) and (7) ("Instructions on findings shall include ... such other explanation or directions as may be necessary and which are properly requested by a party or which the military judge determines, sua sponte, should be given."). Nevertheless, this Court has approved "deliberate ignorance" instructions in court-martial cases where the Government is required to show the knowing use of drugs. *United States v. Newman, supra.*

A "deliberate avoidance" instruction has been referred to as a "deliberate ignorance," a "conscious avoidance," a "Jewell," and an "ostrich" instruction. *See* 1 E. Devitt, C. Blackmar, M. Wolff, and K. O'Malley, *Federal Jury Practice and Instruction* § 17:09 at 670 (4th ed.1992). The Second Circuit recently described how this legal fiction works:

A conscious avoidance charge, such as the one employed by the district court, instructs the jury that it can infer knowledge by the defendant of a particular fact if the defendant intentionally decides to avoid knowledge of that fact. *See United States v. Rodriguez,* 983 F.2d 455, 457–58 (2d Cir.1993). The rationale for the conscious avoidance doctrine is that "a defendant's affirmative efforts to 'see no evil' and 'hear no evil' do not somehow magically invest him with the ability to 'do no evil.'" *United States v. DiTommaso,* 817 F.2d 201, 218 n. 26 (2d Cir.1987). Accord-

ingly, the giving of this charge is proper "'where a defendant has claimed lack of some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance.'" *United States v. Boothe*, 994 F.2d 63, 69 (2d Cir.1993) (quoting *United States v. Lanza*, 790 F.2d 1015, 1022 (2d Cir.), *cert. denied*, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986)). Moreover, the evidence must allow a rational juror to conclude "beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Rodriguez*, 983 F.2d at 458.

*United States v. Adeniji*, 31 F.3d 58, 62 (2d Cir.1994). This explanation comports with our case law and the law of most federal and state jurisdictions. *See generally United States v. Newman, supra; United States v. Lara–Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990); 1 W. LaFave and A. Scott, *Substantive Criminal Law* § 3.05 at 307–09, quoting Model Penal Code § 2.02(7).

■ The granted issue, of course, asks whether the "deliberate avoidance" instruction given by appellant's trial judge was warranted by the evidence admitted in this case. Our decision in *Newman* does not clearly delineate our standard of appellate review for this question. However, the general rule in the other federal courts of appeal is that the judge's decision to instruct is reviewed for an abuse of discretion, with all inferences from the evidence of record to be drawn in the Government's favor. *See United States v. Farouil*, 124 F.3d 838, 843 (7th Cir.1997). Some evidence must have been admitted which permits an inference of deliberate avoidance, *i.e.*, that "the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and … the defendant purposely contrived to avoid learning of the illegal conduct." *Lara–Velasquez, supra* at 951; *see United States v. Posada–Rios*, 158 F.3d 832, 875 (5th Cir.1998).

■ We conclude that the evidence of record in this case, viewed to the Government's benefit, does not reach this high plateau. It shows that appellant met Gallusha for the first time that evening. It also shows that he was informed Jamie's friends, in general, were "disreputable," and that some were drug users. However, only LCpl Tellez knew that Gallusha was an occasional marijuana smoker. Moreover, appellant testified without contradiction that he was not informed and had no knowledge of Gallusha's drug use. He also testified that he saw no drug use that evening by Gallusha or other guests at the party. Finally, there was no evidence that Gallusha discussed the topic of drugs with appellant or offered him any contraband earlier that evening. At best, the record establishes a very low probability that appellant was aware he might be ingesting contraband drugs when he consumed Gallusha's capsules. *Cf. United States v. Wilson*, 134 F.3d 855, 868–69 (7th Cir.1998)(700 pounds of trash bags loaded in truck and knowledge of past shady dealings); *United States v. Soto–Silva*, 129 F.3d 340, 345 (5th Cir.1997)(evidence that accused socialized with, traveled with, and handled drug money for known drug dealer).

In addition, there was no showing that appellant deliberately contrived to avoid knowledge of the nature of the pills he ingested. Admittedly, the record shows appellant willfully took a capsule from a civilian suspected by others to be a drug user. Nevertheless, it is uncontroverted that appellant asked for "No–Doz"; that Gallusha returned with a bottle labeled "No–Doz"; and that Gallusha took two pills out and gave them to appellant. Gallusha also told appellant to take the pills to wake up. These words and actions suggest no calculation on appellant's part or conspiratorial arrangement with Gallusha to secure methamphetamine under the guise of receiving "No–Doz." *Cf. United States v. Bornfield*, 145 F.3d 1123, 1129–30 (10th Cir.1998). In sum, the total circumstances evidenced in this record did not warrant a "deliberate avoidance" instruction. *See United States v. Baron*, 94 F.3d 1312, 1318 (9th Cir.1996) (no evidence that accused, rather than a reasonable person, had his suspicion aroused concerning drug trafficking); *Lara–Velasquez, supra* at 952 (total evidence must be reviewed to determine whether instruction warranted).

■ Nevertheless, we need not reverse appellant's conviction. It is well-established that the erroneous giving of a "deliberate avoidance" instruction does not *per se* require reversal of a conviction secured after such an instruction has been given. *See Newman,* 14 MJ at 479. However, such an error may be constitutional in nature, as pointed out recently by the Sixth Circuit in *United States v. Mari,* 47 F.3d 782, 785 (6th Cir.1995), as follows:

The danger of a deliberate ignorance instruction, as stated by the Eighth and Ninth Circuits, is that *it could cause a jury to convict on the basis of negligence. E.g., United States v. Barnhart,* 979 F.2d 647, 651 (8th Cir.1992); *United States v. Sanchez–Robles,* 927 F.2d 1070, 1073 (9th Cir.1991). These Circuits reason that a jury might misunderstand the instruction and convict a defendant based on what he should have known rather than on what he did know, "thereby relieving the government of its constitutional obligation to prove the defendant's knowledge beyond a reasonable doubt." *Barnhart,* 979 F.2d. at 652; *see also United States v. Murrieta–Bejarano,* 552 F.2d 1323, 1325 (9th Cir. 1977).

*See also United States v. Covington,* 133 F.3d 639, 645 (8th Cir.1998). Accordingly, we must consider whether there was a reasonable possibility that the members found appellant guilty of violating Article 112a on the basis of negligent conduct.

In resolving this question, we initially note that the challenged "deliberate avoidance" instruction in this case contains an express caveat to the members that "knowledge cannot be established by mere negligence, foolishness or even stupidity on the part of [appellant]." *See Mari,* 47 F.3d at 785 (gravamen of erroneous instruction is that accused may be convicted on basis of negligence); *Covington, supra* at 645 n. 6. In addition, the members were instructed that they were only to consider the alternative theory of "deliberate avoidance" if they had "a reasonable doubt that [appellant] actually knew that the substance he used was methamphetamine...." Clearly, sufficient evidence of knowledge existed in this case.

*See Ford,* 23 MJ 331; *see generally Adeniji,* 31 F.3d at 63–64; *Mari, supra* at 785–87, citing *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

Finally, the only defense evidence attacking the Government's case on actual knowledge was completely refuted by additional testimony from the Government witness, Doctor Czarny. He testified that an almost lethal dose of drugs would have been required to render the test results admitted in this case consistent with appellant's story of unknowing ingestion 4 days earlier. *See Adeniji, supra* (overwhelming evidence of knowledge negates prejudice from erroneously given deliberate ignorance instruction); *cf. Baron,* 94 F.3d at 1319 (reversal appropriate where Government evidence of knowledge is not overwhelming and there was significant possibility of prejudice). In these circumstances, we find no reasonable possibility of prejudice from the erroneous instruction.

## II

■ The second granted issue concerns the instruction of the military judge that the members could consider certain defense evidence on the question of appellant's untruthfulness. *See* Mil.R.Evid. 608(b), Manual, *supra.* The evidence in question was a service record book entry, which stated:

940331. Viol Art. 134, UCMJ: In that LCpl Brown did, on or about 15 Jan 94, make and utter to MWR a certain check, in words and figures as follows, to wit: SNM did between 15 Jan 94 to 15 Mar 94 write several worthless checks to MWR aboard Camp Pendleton with a total of $1,479.41, and did thereafter dishonorably fail to maintain sufficient funds. Awd red to PFC, forf $466.00 pay per mos for 2 mos (total forf $932.00) and 45 das restr/45 das extra duty to run concurrently. Susp for a period of 6 mos $466.00x2 (total susp $932.00), 21 das restr and 21 das extra duty. Awd at BN CO (Lt.Col.) NJP on 940331. Rpt. by RUC 11180 UD # 066. Dtd 940405. Not Appealed.

The service record book otherwise contained entries showing exemplary military service by appellant.

As noted above, appellant actually introduced the NJP, whose use as credibility evidence is now challenged on appeal. It was offered by defense counsel prior to findings and without requesting limitation as to its use. The military judge admitted this evidence of appellant's service record, and subsequently stated on two occasions that it could be considered on "his military character" and also as "a means ... to test [his] credibility" as a witness and the opinion of others as to his credibility. Defense counsel made no objection to this use of the evidence at these times, or when the military judge discussed his findings instruction with him. Finally, the military judge, again without defense objection, gave the following instruction on findings:

> Evidence of a prior NJP has been entered for the limited purpose of considering Lance Corporal Brown's entire military record and character for truthfulness. You may not consider this evidence for any other purpose. And you may not conclude from this evidence that this accused is a bad person or has criminal tendencies and that he therefore committed the offense charged. That has to do with evaluating his military character and truthfulness.

RCM 920(c) provides: "Each party shall be given the opportunity to be heard on any proposed instruction on findings before it is given." RCM 920(f) further provides:

> *Waiver. Failure to object to an instruction ... before the members close to deliberate constitutes waiver of the objection in the absence of plain error.* The military judge may require the party objecting to specify [in] what respect the instructions given were improper. The parties shall be given the opportunity to be heard on any objection outside the presence of the members.

(Emphasis added.) Thus, appellant's claim was forfeited unless he shows the military judge's instruction was plain error. *See United States v. Powell*, 49 MJ 460 (1998)

(current military rule of plain error); *see also United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)(distinguishing waiver from forfeiture).

On this question, we note that the Government concedes it was error for the military judge to instruct the members that the prior NJP for worthless checks could be considered in assessing appellant's character for truthfulness. It reasons that, since this crime does not involve deceit or falsity, but rather bad faith or gross negligence, Mil. R.Evid. 608(b) precluded its use on the credibility question. Nevertheless, it contests appellant's argument of substantial prejudice, and it asserts that this instructional error did not prejudice any of his substantial rights. Art. 59(a), UCMJ, 10 USC § 859(a). We agree.

In this regard, we first note that the defense introduced this evidence and, despite repeated opportunities to do so, failed to request any limitations on its use. Clearly, defense counsel's demonstrated lack of concern with the trial judge's instruction suggests it was considered a matter of little consequence at appellant's trial. *See United States v. Causey*, 37 MJ 308, 311 (CMA 1993), quoting *United States v. Grandy*, 11 MJ 270, 275 (CMA 1981). Second, appellant explained the cause of his worthless checks in terms of a family mix-up on the distribution of insurance proceeds, and he asserted that he immediately repaid these checks. The admission of this uncontradicted evidence clearly marginalized the impact of the trial judge's instruction on appellant's credibility. *See United States v. Taylor*, 44 MJ 475, 480 (1996). Finally, we agree with the Government that appellant's character for truthfulness was not the critical issue in this case. Instead, it was the probability of his particular innocent ingestion testimony. Moreover, the prosecution presented overwhelming scientific evidence, unrebutted by the defense, that the defense theory was factually improbable, if not impossible. *See United States v. Williams*, 47 MJ 142, 144 (1997); *see also United States v. Jackson*, 38 MJ 106, 111 (CMA 1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994) (erroneous failure to give limiting in-

struction not plain error where it concerns matters which are not outcome determinative); *United States v. Murphy*, 33 MJ 248, 249 (CMA 1991). In these circumstances, we find no plain error.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

COX, Chief Judge (dissenting in part and concurring in the result):

I respectfully disagree that the military judge erred in giving the "deliberate avoidance" instruction in this case. Appellant acknowledged the ingestion of a substance that was designed to keep him awake. The only question was whether or not he knew the substance was a controlled one that could not lawfully be ingested without a proper prescription. Accepting the expert testimony in a light most favorable to the Government, appellant consumed methamphetamine/amphetamine within 24 hours of the test. Appellant also admitted that the consumption of the substance 4 days earlier made his hands shake, made him feel "peppy," and made it difficult for him to sleep the following morning. He further admitted that he received at least two pills from his friend's acquaintance.

Under these circumstances, a rational finder of fact could conclude that appellant ingested one of the pills on the night he received them and the other shortly before the urinalysis. In such a situation, even if we give appellant the benefit of the evidence and determine that he was justifiably ignorant of the nature of the drug on the night he received the pills, his failure to ascertain the true nature of the drug before he took the second pill was willful, deliberate, and reckless. The instruction was proper under this scenario.

Of course, the finders of fact in this case were perfectly free to disbelieve appellant's testimony and evidence, and to conclude that appellant willfully and knowingly ingested a controlled substance known to contain properties to keep one awake, the exact properties of methamphetamine. *See* 1997 Methamphetamine Control Strategy of Arizona ("Meth is an equal opportunity destroy-er")(visited Mar. 5, 1999) <http://www.anti-meth.com/about_meth.htm>.

CRAWFORD, Judge (concurring in the result):

I concur in the result as to Issue I, finding any error to be harmless.

I agree that the standard of review is whether the judge abused his discretion in giving the "deliberate avoidance" of knowledge instruction. However, "deliberate" is a misnomer. One may avoid knowledge intentionally, recklessly, or negligently. *See* § 2.02(7), ALI Model Penal Code, *reprinted in* ALI Model Penal Code and Commentaries 227 (1985) ("When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist.").

Neither our case law nor other federal case law is as clear as the majority indicates. *See generally* Robin Charlow, *Wilful Ignorance and Criminal Culpability*, 70 Tex. L.Rev. 1351 (1992); Frans J. Von Kaenel, *Willful Blindness: A Permissible Substitute for Actual Knowledge Under the Money Laundering Control Act?*, 71 Wash. U.L.Q. 1189 (1993); Jonathan L. Marcus, *Model Penal Code § 2.02(7) and Willful Blindness*, 102 Yale L.J. 2231 (1993). Whether there exists this avoidance of knowledge under any of these standards depends on the reliability of the evidence presented.

We need not resolve the question of whether the circumstantial evidence in this case does or does not establish either a deliberate or reckless avoidance of knowledge. Urine testing of appellant established an amphetamine concentration of 2454 nanograms per milliliter, and 10573 nanograms per milliliter of methamphetamine. Additionally, appellant testified that, after he took two pills from a bottle labeled "No–Doz," he felt peppy, his hands shook, and he could not sleep that morning. A stipulation of fact established that the high concentration of methamphetamine found in appellant's urine could not be explained by a single ingestion 4 days prior to the urinalysis. Thus, there is ample

evidence to reject the testimony set forth by appellant as to the two pills coming out of a "No–Doz" bottle. Under such circumstances, appellant demonstrated at least a reckless disregard as to what kind of pills he consumed.

I agree that, given the facts in this case, if there was error, it was harmless.