# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39724**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dylan S. Hale**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 February 2021

————————————

*Military Judge:* W. Shane Cohen.

*Approved sentence:* Dishonorable discharge, confinement for 3,040 days, and reduction to E-1. Sentence adjudged 17 February 2019 by GCM convened at Mountain Home Air Force Base, Idaho.

*For Appellant:* Major M. Dedra Campbell, USAF; Captain Matthew L. Blyth, USAF; Tami L. Mitchell, Esquire; David P. Sheldon, Esquire.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Jessica L. Delaney, USAF; Major John P. Patera, USAF; Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges*.

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, contrary to his pleas, of two specifications of attempted sexual assault of a child and one specification of attempted receipt of child pornography, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880; one specification each of simple assault and assault consummated by a battery upon another Airman, CJC, in violation of Article 128, UCMJ, 10 U.S.C. § 928; one specification of wrongful possession of tetrahydrocannabinol (THC), in violation of Article 112a, UCMJ, 10 U.S.C. § 912a; and one specification of wrongful possession of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] Appellant pleaded guilty by exceptions and substitutions to two specifications of simple assault in violation of Article 128, UCMJ;[3] the military judge found Appellant guilty of one simple assault upon CJC and one assault consummated by a battery upon CG, both in violation of Article 128, UCMJ. Additionally, Appellant was found guilty, consistent with his pleas, of one specification of willful dereliction of duty for underage drinking and two specifications of failure to obey a lawful general regulation proscribing possession of substances to alter mood or function, in violation of Article 92, UCMJ, 10 U.S.C. § 892; one specification of operating a vehicle while drunk, in violation of Article 111, UCMJ, 10 U.S.C. § 911; and one specification each of wrongfully leaving the scene of an accident and obstruction of justice, in violation of Article 134, UCMJ. Appellant was sentenced to a dishonorable discharge, confinement for 3,040 days, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged. Appellant was credited with 261 days for pretrial confinement served.

Appellant raises seven issues on appeal: (1) whether the court-martial had jurisdiction over Appellant for possession of child pornography (a) that he received before he enlisted in the Air Force, and (b) while he was a juvenile; (2) whether the evidence is legally and factually sufficient to support six particular

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant pleaded, and was found, not guilty of one specification of an attempted lewd act and one specification of obstruction of justice, charged, respectively, as violations of Articles 80 and 134, UCMJ, 10 U.S.C. §§ 880, 934.

[3] Appellant pleaded not guilty as charged to aggravated assault, in violation of Article 128, UCMJ, 10 U.S.C. § 928.

specifications; (3) whether two sets of specifications are unreasonably multiplied;[4] (4) whether the staff judge advocate (SJA) erred in advising the convening authority he could not grant administrative confinement credit; (5) whether trial defense counsel were ineffective for failing to move to suppress Appellant's statements, to present a defense of entrapment, and to advise Appellant not to unnecessarily disclose aggravating information during his providence inquiry; (6) whether Appellant's sentence is inappropriately severe; and (7) whether the SJA erred in advising the convening authority of the correct maximum imposable term of confinement.[5] Having carefully considered the presented issues, we find no merit to the contention in issue (1)(b) that jurisdiction was wanting due to Appellant's age,[6] and issues (5)–(7) require no further discussion nor warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We address the remainder of issue (1) with issue (2); issues (3) and (4); and an additional issue of whether Appellant is entitled to relief for facially unreasonable post-trial delay. Finding no error materially prejudicial to Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

Appellant enlisted in the Air Force on 30 May 2017, when he was 17 years old. All the offenses were committed at or near Mountain Home Air Force Base (AFB), Idaho, and nearby Boise, Idaho, before Appellant's 19th birthday.

### 1. Communications with RV and "Josh"

Appellant briefly met 16-year-old RV around February 2018 through a local Civil Air Patrol program for which Appellant volunteered. In early April 2018, Appellant sent RV sexually themed messages, and continued to message even though RV did not respond. RV told his father, who involved the police. They

---

[4] In his assignments of error, Appellant conflates the concepts of multiplicity and unreasonable multiplication of charges. The former requires no further discussion nor warrants relief in this case. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). The latter, as discussed below, we find was waived.

[5] Appellant personally raised issues (5)–(7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[6] *See United States v. Baker*, 34 C.M.R. 91, 93 (C.M.A. 1963) ("The [UCMJ] and court-martial procedure apply to all persons in the armed forces, regardless of age. We hold, therefore, that the Federal Juvenile Delinquency Act, by its express terms and its purpose, is inapplicable to the military establishment, and does not deprive a court-martial of jurisdiction over a minor offender for a violation of the [UCMJ]."). *See also United States v. Quinones*, 33 C.M.R. 910, 913 (A.F.B.R. 1963) (citations omitted) (finding Congress did not intend for the Federal Juvenile Delinquency Act to apply to members of the armed forces).

gave Boise Police Detective TB (Det TB) authority to assume RV's identity and take over for RV in the conversations with Appellant. In his messages to RV, Appellant asked several times for RV to send a photo of his penis.

Det TB introduced a fictitious minor, "Josh," into the conversation. "Josh" was portrayed as RV's 14-year-old friend from school who lived in foster care. Det TB communicated with Appellant as both RV and "Josh." The conversation ultimately moved to plans to meet RV and "Josh" for sex with them: they would meet at a Boise mall, and Appellant would take them to a hotel. On 12 April 2018, Appellant drove to meet RV and "Josh" at the mall as planned. Appellant was met by law enforcement from the Boise Police Department and the Air Force Office of Special Investigations (AFOSI).

**2. House Party**

Appellant attended a party at a house on Mountain Home AFB the night of 2–3 June 2018. He drove his Honda Civic to the party, accompanied by his friend and fellow Airman, CC. While at the party, Appellant drank eight or more cans of beer and some shots of vodka. His behavior at the party can best be described as "obnoxious."

CG and CJC, both fellow Airmen, arrived to the party later, in part to see if anyone needed a ride home. Appellant knew CG, and said he knew CJC as "Brandon" and that they had had sex, which CJC denied.

Appellant, apparently frustrated with CJC's repeated denials, threatened to "slap" and "beat" CJC. Appellant then lunged at CJC across a kitchen counter; CJC thought Appellant was aiming to grab his head. Appellant missed and fell, then tied his shoe. Next, Appellant went around the counter and grabbed CJC by his shirt.[7] CG and JT, another Airman, separated the two; JT put Appellant in a head lock. Soon thereafter, Appellant left the house and drove away, along with CC; they returned after a few minutes.

Appellant got out of his car and confronted CJC and CG, who were standing at the street edge of the house's driveway; CC remained in the car. JT intercepted Appellant, picked him up, and carried him to Appellant's car for him to cool down. After about a minute, during which time Appellant said he was taking a breath, Appellant drove his car towards CJC and CG. He hit CG,[8] and

---

[7] These form the bases for the convictions of simple assault and assault consummated by a battery upon CJC, to which Appellant pled not guilty.

[8] These form the bases for the convictions of simple assault upon CJC and assault consummated by a battery upon CG; Appellant had pleaded guilty to simple assaults. CG suffered a scraped elbow and a bruised upper thigh. Appellant's vehicle was not damaged.

continued driving; he did not stop to provide assistance or face the consequences of causing an accident. He tried to drive off base, but the gate was temporarily closed.

While waiting for the gate to open, and knowing that law enforcement would investigate his hit-and-run incident, Appellant told CC to lie about what happened. Appellant specifically told CC what to say, which included denying anything happened, and lying about where they had come from. Law enforcement apprehended Appellant before the gate was reopened. Appellant's actions in his car, including his assaults on CJC and CG and his conversation with CC, were captured by his aftermarket dashboard audio-visual recorder installed in the car.

### 3. Search of Appellant's Room

After his apprehension at the mall but before his apprehension at the gate, and pursuant to a valid search authorization, AFOSI agents searched Appellant's dorm room for evidence of nude photographs of children. They seized electronic devices capable of storing such media. A forensic search of Appellant's external hard drive and tower computer revealed at least 61 images of child pornography.

After Appellant's apprehension at the gate, and pursuant to another valid search authorization, on 8 June 2018 AFOSI agents searched the safe in Appellant's room. They saw and seized white powder and some green "residue." Forensic testing revealed the powder and residue contained 3-fluoro-phenmatrazine (3-FPM) and THC. The agents also found dimethocaine.

Appellant stated during his guilty-plea inquiry at trial that he bought both 3-FPM and dimethocaine for his use, to alter his mood and function, knowing Airmen were prohibited from using them.[9] He purchased the substances on the Internet and received them through the mail. Appellant admitted to the military judge he ingested the 3-FPM eight times and dimethocaine more than once.

---

[9] The Government's expert witness testified in sentencing about these substances: 3-FPM is a chemically modified form of phenmetrazine, an appetite suppressant taken off the market in the United States, that boosts mood and self-esteem; dimethocaine is an anesthetic that produces effects similar to, but much weaker than, cocaine.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of the findings of guilt of the offenses to which he pleaded not guilty, with the exception of Specification 1 of Charge IV (lunging at CJC across the counter).

#### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). Moreover, the "government is free to meet its burden of proof with circumstantial evidence." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted), *cert. denied*, __ U.S. __, 139 S. Ct. 1641 (2019). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

### 2. Attempted Sexual Assaults of a Child

Appellant challenges the sufficiency of the convictions of Specifications 1 and 2 of Charge II on three bases: (1) traveling to the mall was not a "substantial" step towards committing the offense of sexual assault of a child; (2) Appellant did not intend to commit acts "upon" "Josh" nor "cause" "Josh" to commit acts upon Appellant, but instead "the evidence shows [Appellant] desired for 'Josh' to commit the sexual actions 'upon' *Appellant*, and that [Appellant] intended for Josh to do so of his own free will;" and (3) Appellant was entrapped.

In order to convict on an attempt offense under Article 80, UCMJ, the Government is required to prove beyond a reasonable doubt that the accused did a certain overt act, that the act was done with the specific intent to commit a certain offense, that the act amounted to more than mere preparation, and that the act apparently tended to effect the commission of the intended offense. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 4.b.

For Appellant to be found guilty of the attempted offense of sexual assault of a child, the Government was required to prove beyond a reasonable doubt all the elements of attempt, including that Appellant intended to commit a sexual act upon "Josh," a child who had attained the age of 12 years but not 16 years, by causing "Josh's" penis to penetrate Appellant's anus (Specification 1) and Appellant's mouth (Specification 2).[10] *See MCM*, pt. IV, ¶ 45b.b.(3)(b). A sexual act includes "contact between the penis and the . . . anus or mouth" and "occurs upon penetration." *See MCM*, pt. IV, ¶¶ 45b.a.(h)(1), 45.a.(g)(1)(A).

In cases involving attempts to entice minors to engage in sexual activity, "courts agree that travel constitutes a substantial step." *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (citations omitted) (considering an offense charged under 18 U.S.C. § 2422(b)). Analyzing an attempted larceny conviction under *Winckelmann*, the United States Court of Appeals for the Armed Forces (CAAF) noted it had "recognized that a substantial step could be comprised of something as benign as travel, arranging a meeting, or making hotel reservations." *United States v. Hale*, 78 M.J. 268, 272 (C.A.A.F. 2011) (footnote and citation omitted).

---

[10] As charged, Specifications 1 and 2 also required the Government to prove bodily harm to "Josh." The military judge identified that "bodily harm" was not an element of sexual assault of a child. The military judge heard argument from counsel for both parties on whether the Defense was on notice and whether the language was superfluous. Ultimately, the military judge found Appellant not guilty of the charged "bodily harm" language.

Entrapment is an affirmative defense. Rule for Courts-Martial (R.C.M.) 916(g) states: "It is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense."

In this case, traveling to the mall to meet RV and "Josh" was a substantial step. After "RV" asked about meeting at a hotel, Appellant said, "Yeah but we're going to meet up before I get the room. I'm not going to get a room and risk having you flake out." Appellant arranged to meet RV and "Josh" at the mall, at a specific date, time, and place. After "RV" suggested a particular parking lot at the mall, Appellant replied, "Ok. That works. How do you want me to start when we get to the hotel. And don't say idk lol." Appellant and RV communicated throughout the day of the meet, including when Appellant left work and when he arrived at the mall. Appellant arrived at the meeting place as planned. "Josh" had asked Appellant to bring "lube," and he did.

The Government was required to prove Appellant intended a penetrative contact between "Josh's" penis and Appellant's anus and mouth; they did so by introducing the exchange of messages and Appellant's statements to law enforcement. Most telling is this exchange:

> [Appellant:] Ok cool. Where do you wanna meet? . . . Well I just want you both to take turns f[**]king me with your big cocks
>
> [RV:] Do you know Boise good?
>
> [Appellant:] But I'll start out with blowing you both. And I primarily use gps

Appellant was clear that he intended to place "Josh's" penis in his mouth, and to place "Josh's" penis in his anus.[11] This intent is not negated because Appellant also intended for "Josh" to assist in completing the penetration.

We also resolve the claim of entrapment against Appellant, and highlight the following exchange between RATV and Appellant:

> [RV:] So my friend asked me to ask you if he could get a blow to
>
> . . .
>
> [RV:] He's pretty cool. He's almost 15 but he doesn't act like it
>
> [Appellant:] Oh idk that might be a little too young
>
> [RV:] ok

---

[11] We agree with Appellant's conclusion in this case that "[i]f Appellant had the specific intent to cause 'Josh' to penetrate his mouth and anus with 'Josh's' penis, then traveling to meet 'Josh' is enough to constitute a 'substantial step.'"

[Appellant:] Idk when I see a pic of him I'll let you know for sure. Would you want me to blow you both at the same time?

[RV:] He said that would be better . . . But idk . . . I've never done ir

[Appellant:] I mean it'd be pretty hot but it would be a lot harder to find a place . . . I have a feeling he would want me to do more than just blow him [laughing-crying emoji]

[RV:] I think so to . . . I'll tell him no

[Appellant:] I mean like I said I'd be down . . . I just wanna see a pic of him and plus getting a location would be harder . . . But if he wanted to f[**]k me I'd be down to try it. Maybe you guys could take turns haha

While Appellant briefly hesitated based on "Josh's" age, his only real concerns were what "Josh" looked like and where they could perform the acts. Appellant accepted "a criminal offer without an extraordinary inducement to do so," displaying his "predisposition to commit the crime in question." *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992) (citations omitted). Thus, Appellant was not entrapped to commit attempted sexual assault of a child.[12]

### 3. Attempted Receipt of Child Pornography

Appellant challenges the sufficiency of Specification 4 of Charge II on two bases: (1) Appellant's conduct was not service discrediting, and (2) Appellant believed he could lawfully request a sexual photo from a boy who was old enough to consent to sexual activity.

In order for Appellant to be found guilty of the attempted offense of receipt of child pornography, the Government was required to prove beyond a reasonable doubt all the elements of attempt as discussed above, including that Appellant intended to knowingly and wrongfully receive a photograph of a minor engaging in sexually explicit conduct (specifically, by asking a person he believed to be RV to take and send a photograph of RV's penis to him), and that such conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 68b.b.(1). For this offense, a minor is a person under 18 years of age. *See MCM*, pt. IV, ¶ 68b.c.(4). Conduct that "has a tendency to bring the service into disrepute or . . . tends to lower it in public esteem" is "service discrediting." *MCM*, pt. IV, ¶ 60.c.(3).

---

[12] For similar reasons, Appellant's trial defense counsel were not ineffective for failing to present this defense of entrapment at trial, as Appellant claims in Issue (5).

The Government proved beyond a reasonable doubt that Appellant intended an act which amounts to receiving child pornography proscribed by Article 134, UCMJ, and that his intended conduct tended to discredit the service. Appellant asked RV, a 16-year-old boy, to send Appellant a picture of his penis. Appellant continued to ask for such a photo, even after "RV" said he was nervous. One exchange is particularly illustrative:

> [Appellant:] Because you have one of mine and I wanna see it hard or at least semi hard . . . Plus the fact you told me you'd send me one
>
> [RV:] I know
>
> [Appellant:] Please . . . Idc if it's soft or hard I just want one so we're even
>
> [RV:] What if I let you take one on Thursday
>
> [Appellant:] Now. Please . . . If you send one now I'll let you record you f[**]king me . . . Please, man . . . ?

At trial, the Government argued this evidence of "badgering" satisfied the element that the intended conduct was service discrediting. Considering the evidence in the light most favorable to the Government, we agree.

Whether Appellant believed requesting a photo of a 16-year-old boy's penis was a crime is not an element of attempted receipt of child pornography. "[I]f the accused specifically intended to perform an act which is otherwise defined as a crime by the [UCMJ] and takes steps toward the consummation of that intended result amounting to more than mere preparation, he is guilty of an attempt under Article 80[, UCMJ]. Thus, the 'specific intent' which must be proved is the intent to commit the proscribed act. 'There are no other elements to the offense.'" *United States v. Foster*, 14 M.J. 246, 249 (C.M.A. 1982) (citation omitted). To be guilty of attempting this offense prohibited by Article 134, UCMJ, Appellant need only have intended the act which tends to be service discrediting; he need not have intended to discredit the service. *See United States v. Payne,* 73 M.J. 19, 24 n.8 (C.A.A.F. 2014).

### 4. Assault Consummated by a Battery

Appellant has two bases for challenging Specification 2 of Charge IV, but only one merits discussion: whether a touching occurred.[13]

---

[13] The second basis is that CJC provoked Appellant's attack with his words. Appellant fails to explain how this relates to legal or factual sufficiency, and we find no merit in the suggestion that it does.

In order for Appellant to be found guilty of an assault consummated by a battery, the Government was required to prove beyond a reasonable doubt that Appellant did bodily harm to CJC with unlawful force or violence. *See MCM*, pt. IV, ¶ 54.b.(2).

CJC clearly testified that Appellant touched him during the assault. He stated, "[Appellant] reached for my neck and grabbed my shirt." He then confirmed Appellant did "actually grab onto" him. And again, CJC testified, "[Appellant] reached for [his] throat and grabbed onto [his] shirt and began to pull." While the record contains some inconsistencies about whether certain actions occurred during the first or second assault upon CJC, we are satisfied the Government proved beyond a reasonable doubt that Appellant grabbed CJC by the shirt, satisfying the elements of bodily harm with unlawful force or violence.

### 5. Wrongful Possession of Tetrahydrocannabinol

In his challenge to his conviction of the Specification of Additional Charge II, Appellant claims he did not know THC was present along with the substance he knowingly possessed—3-FPM. He correctly notes that a small amount of THC was mixed with the 3-FPM when the substances were sent for testing. However, he implies he possessed them mixed, i.e., tiny flecks of green among the white powder. The evidence does not support this conclusion.

In order for Appellant to be found guilty of wrongful possession of THC, the Government was required to prove beyond a reasonable doubt that Appellant wrongfully possessed THC, a Schedule I controlled substance. *See MCM*, pt. IV, ¶ 37.b.(1). Possession is not wrongful when the person does not have knowledge of the contraband nature of the substance. *See MCM*, pt. IV, ¶ 37.c.(5). "Possession . . . of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary." *Id*. "An accused may not be convicted of possession of a controlled substance if the accused did not know that the substance was present under the accused's control. Awareness of the presence of a controlled substance may be inferred from circumstantial evidence." *MCM*, pt. IV, ¶ 37.c.(2). Deliberate ignorance of the contraband nature of the substance is akin to actual knowledge. *See MCM*, pt. IV, ¶ 37.c.(11); *United States v. Brown*, 50 M.J. 262, 265–66 (C.A.A.F. 1999) (citations omitted).

An AFOSI agent who conducted the search of Appellant's safe testified about the contents. He found two loose substances: one a white powder and the other a green leafy or powdery substance. On cross-examination, the agent clarified that he found the green leafy substance "right next to" the white powdery substance. In response to the military judge's questions, the agent explained how they seized the substances: "we took the items out of the safe and while one person held the bag open, the other person held the safe and kind of

just pushed the substances out of the safe. . . . There was no feasible way to collect them separately, so we collected [them] all together." The green substance tested positive for THC, the active ingredient in marijuana and a Schedule I controlled substance.

The Government was required to prove Appellant knew he possessed the substance, and knew that the substance was THC or of a contraband nature; such knowledge can be inferred. In this case, it appears the military judge was satisfied, as are we, that Appellant did not possess just trace amounts of THC mixed in with 3-FPM, but possessed the substances separately. That the green substance was seized from Appellant's safe is strong circumstantial evidence that Appellant knew he possessed the substance. That the THC was found next to another drug—albeit a controlled-substance analog—is circumstantial evidence Appellant knew the substance was of a contraband nature. Based on the facts presented at trial, the military judge could infer Appellant's possession was wrongful.

### 6. Wrongful Possession of Child Pornography

Appellant challenges the sufficiency of the Specification of Additional Charge IV on three bases: (1) Appellant did not have control over computer files in unallocated space, (2) the evidence does not show Appellant knowingly possessed the child pornography after he enlisted in the Air Force, and (3) Appellant's conduct was not service discrediting.

For Appellant to be found guilty of the offense of wrongful possession of child pornography, the Government was required to prove beyond a reasonable doubt that Appellant knowingly and wrongfully possessed digital images and videos of minors engaging in sexually explicit conduct, and that such conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 68b.b.(1). "Possessing" means exercising direct or constructive control of something. *See MCM*, pt. IV, ¶ 60.c.(5). "Possession must be knowing and conscious." *Id.*

The Government called the forensic digital media examiner who analyzed digital media seized from Appellant to testify about his findings. He testified that all the images and videos he referenced in his testimony came from allocated space. He stated they were not deleted and were found on more than one device. The examiner did find link files in unallocated space, but used those files to identify when a file in allocated space was accessed.

The examiner also testified in detail about the indications he found showing user knowledge of files containing sexual images of minors. Most of the files the examiner identified were "created" or placed on the device in 2016—before Appellant enlisted in the Air Force. However, many files in Appellant's possession were accessed after Appellant enlisted, including in December 2017

and February 2018. The examiner testified that link and jump files[14] are "forensically significant" in that they show "that the files were opened and that the user was aware that the files were there." In addition to link and jump files, the examiner testified that finding "duplicate files at different locations on the evidence" indicated knowing possession of child pornography. Also, many files were found in user-created folders. Finally, Appellant's computers were password protected and had only one user account, which was in Appellant's name. The examiner's testimony and related documents provided a solid basis for the military judge to find Appellant knowingly possessed child pornography after his Air Force enlistment and entry on active duty.

Appellant invites us to find that his conduct was not service discrediting because of his youthful age, the relatively low number of images he possessed, that he obtained many of the images before he enlisted, and that his possession was not known to the public. As to this final reason, we note "[t]he focus of clause 2 [of Article 134, UCMJ,] is on the 'nature' of the conduct, whether the accused's conduct would tend to bring discredit on the armed forces if known by the public, not whether it was in fact so known." *United States v. Phillips*, 70 M.J. 161, 165–66 (C.A.A.F. 2011). While Appellant's other reasons are relevant considerations, "[w]hether any given conduct [is service discrediting] is a question for the trier of fact to determine, based upon all the facts and circumstances; it cannot be conclusively presumed from any particular course of action." *Id.* at 165. We find the military judge had a sufficient basis to determine this element was met based on the evidence introduced at trial.

For the foregoing reasons, we find Appellant's convictions of Specifications 1, 2, and 4 of Charge II, Specification 2 of Charge IV, the Specification of Additional Charge II, and Specification 1 of Additional Charge IV legally and factually sufficient. Considering the evidence in the light most favorable to the Prosecution, we find that a rational factfinder could have found Appellant guilty beyond a reasonable doubt of all the elements of those offenses. After weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## B. Unreasonable Multiplication of Charges

Appellant argues for the first time on appeal that Specifications 1 and 2 of Charge II—attempted sexual assault of "Josh"—as well as Specifications 1 and 2 of Charge IV—assault and assault consummated by a battery of CJC in the

---

[14] The examiner testified that a "jump file" reflects the "jump list," which Windows uses to show the user the last several files viewed using a particular program.

kitchen—constitute an unreasonable multiplication of charges. Appellant invites us to review this issue "de novo" and requests we merge each pair of specifications "for findings and authorize a rehearing on sentence."

Failure to raise an objection at trial to unreasonable multiplication of charges waives the issue. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2015). Even in the face of waiver, the Courts of Criminal Appeals are empowered under Article 66(c), UCMJ, to consider claims otherwise waived as part of our obligation to affirm only such findings and sentences which are correct in law and should be approved. *See United States v. Chin*, 75 M.J. 220, 222–23 (C.A.A.F. 2016). We have reviewed the entire record, and we decline to pierce Appellant's waiver of this issue.

### C. Advice to the Convening Authority on Administrative Credit

Appellant claims the convening authority erroneously was advised that he did not have the authority to grant Appellant 783 days of administrative confinement credit that Appellant requested in clemency. Appellant requests this court "set aside the convening authority's action and remand for a new addendum and initial action." Appellant cites no authority for his claim that the convening authority had the power to award administrative credit for conditions of pretrial confinement, and we find none. Accordingly, no relief is warranted.

#### 1. Additional Facts

In his request for clemency, Appellant requested disapproval of his reduction in grade, citing R.C.M. 1107(d)(1)(A) and Article 60(c)(2)(A), UCMJ, 10 U.S.C. § 860(c)(2)(A). He also requested three-to-one administrative credit for the days he spent in pretrial confinement, stating his request for administrative confinement credit "is a different request than asking the convening authority to approve some amount of confinement less than adjudged in the convening authority's Action." Notably, he cited no authority to support his request.

The addendum to the staff judge advocate's recommendation to the convening authority addressed in detail Appellant's request for relief based on harsh conditions of pretrial confinement. It then correctly advised the convening authority that under R.C.M. 1107(d)(1)(B), in Appellant's case he could not disapprove, commute, or suspend the sentence to confinement.

We note that at trial Appellant specifically waived the issue of administrative confinement credit. After the military judge asked trial defense counsel whether Appellant was punished in any way that would constitute illegal pretrial punishment under Article 13, UCMJ, 10 U.S.C. § 813, civilian trial defense counsel replied, "Yes, Your Honor. However, I just wanted to clarify up front we are not seeking any findings of fact, we are not seeking a ruling or any calculation of credit, this is solely being offered for you to consider during your

deliberations." Counsel then detailed the conditions of Appellant's pretrial confinement, and the Government and Appellant stipulated those proffered facts were true. The military judge clarified that the Defense was "not raising an Article 13[, UCMJ,] or an R.C.M. 305 motion" and specifically that they were "waiving the right to . . . file a formal R.C.M. 305 motion." He also ascertained the basis for their claim was "unusually harsh circumstances" and they were "not claiming any intent to punish." The military judge addressed Appellant, telling him that his counsel was "not going to file a motion for illegal pretrial punishment" but instead "they intend to raise all these factors about the circumstances under which [Appellant has] been confined up to this point." Appellant affirmed that he agreed and that he understood that he was waiving the issue.

### 2. Law and Analysis

"The proper completion of post-trial processing is a question of law the court reviews de novo." *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim. App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in the SJAR or matters attached to the SJAR waives or forfeits any later claim of error unless there was plain error. *Id.* at 614; R.C.M. 1106(f)(6). In analyzing for plain error, we assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Kho*, 54 M.J. at 65 (citations omitted).

Rule for Courts-Martial 305 addresses administrative credit for pretrial confinement. "The military judge may order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances." R.C.M. 305(k). Such credit can be awarded in addition to other pretrial confinement credit the military judge orders, including for the government's failure to comply with certain procedural requirements of R.C.M. 305. *Id.* When the military judge has directed credit under R.C.M. 305(k), "the convening authority shall so direct in the action." R.C.M. 1107(f)(4)(F). The Rules for Courts-Martial do not provide any other mechanism for ordering or directing administrative credit for the conditions of pretrial confinement.

We find no error in the advice to the convening authority regarding Appellant's request for administrative confinement credit. The convening authority did not have authority to reduce Appellant's sentence to confinement when acting on the sentence. *See* Article 60, UCMJ, 10 U.S.C. § 860; R.C.M. 1107(d)(1)(B). We do not agree with the logical conclusion of Appellant's argument: that the convening authority could have circumvented the limitations on his power by instead granting "administrative credit" against Appellant's sen-

tence to confinement. When an accused believes administrative pretrial confinement credit is warranted, the appropriate avenue for relief is via the military judge.

**D. Post-Trial Delay**

Appellant's case was docketed with this court on 10 July 2019. Appellant's counsel requested 11 enlargements of time to file his brief; all were granted over government opposition. Appellant filed his assignments of error 394 days later, on 7 August 2020. The Government requested one enlargement of time to reply to the allegations of ineffective assistance of counsel, which request was unopposed and granted. The Government filed its answer brief to Appellant's assignments of error on 16 October 2020. Appellant requested two enlargements of time to file his reply brief; both were granted over general government opposition. Appellant filed his reply brief on 12 November 2020.

The CAAF established a presumption of facially unreasonable delay when Courts of Criminal Appeals do not render a decision within 18 months of docketing. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id*. at 136 (citing *Barker*, 407 U.S. at 533).

However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). In this case, we find no oppressive incarceration nor impairment of the Defense at a rehearing. *See id*. at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id*. Appellant has articulated no such particularized anxiety in this case, and we discern none.

We find neither qualifying prejudice from the delay nor a particularly egregious delay here. *See Toohey*, 63 M.J. at 362. This court is issuing its opinion just over two months after Appellant filed his reply brief and less than 19

months after docketing with this court. Appellant has neither demanded speedy appellate review nor asserted that he is entitled to relief for appellate delay. Accordingly, we do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See id.*

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court